Morton J.
delivered the opinion of the Court. This is A an action of debt brought on articles of agreement alleged to nave been entered into by the plaintiffs on one part and the defendants on the other. The plaintiffs aver, that by this agreement, they, as purchasers of pews in a certain meetinghouse, on the one part, having certain claims and demands in relation to such house against the defendants, as original proprietors of the house, on the other, mutually agreed to submit them to arbitration, and that the arbitrator, having accepted the trust, made an award, but that the defendants did not abide by it, but in several particulars violated it.
There are several pleas which it will not be necessary particularly to notice, as the examination of the two principal questions discussed at the bar will be decisive of the case
*321 It is necessary to the validity of every contract, that there should be proper parties, competent to contract with each other. Our attention therefore ought first to be directed to the inquiry, who are the parties to this agreement, and whether the parties to the agreement and the parties to the action are th same.
It is .contended on the part of the defendants, that the language of the instrument is so vague, that no definite meaning can be deduced from it, and therefore that it is void for uncertainty. It obviously is not drawn with technical accuracy, nor is it free from ambiguity. And this difficulty meets us in our first inquiry. It is not easy to determine from the instrument itself, who are the parties to it; nor whether it is, as the plaintiffs contend, a contract between a number of individuals having a joint interest, asserting a claim on one side, against another association of individuals also having a joint interest in resisting it on the other, or a several contract between each.of the signers and each or all of the other signers. And no solution of this question can be drawn from any thing contained m the instrument itself. It purports to be an agreement between the builders of the house and the purchasers of pews in it; but who among the subscribers belong to the one class and who to the other, cannot be inferred from any thing appearing in the writing itself.
In looking into the report of the case, we learn that the defendants were the builders of the house, and the plaintiffs were purchasers of pews. The controversy was between these two classes of persons, and the award was intended to be a determination of this controversy. Did the facts stop here, we should have no difficulty upon this part of the case. But it further appears, that not only the plaintiffs, but many of the defendants, were purchasers of pews. If the purchasers of pews were the claimants in the arbitration, they are jointly entitled to the fruits of the award, and will be jointly interested in the present judgment, and therefore must necessarily have been joined in the action. In the agreement declared on, the claim is made by “ Eastman and others whose names are subjoined, purchasers of pews,” against “ Wright and others whose names are subjoined, original subscribers for building said *322 meetinghouse.” It cannot therefore be said, that this demand was made by the purchasers of pews upon those only of the original subscribers who were not purchasers. The facts of the case will not admit of this construction, for Wright must necessarily be one of the parties contracting with the purchasers of pews, and yet Wright himself was one of the pur chasers. Nor will the language of the instrument, or the justice of the case, permit us to adopt the opposite construction, that the demand was made by those of the purchasers of pews who were not original proprietors, upon all the original proprietors. Many of the original proprietors were purchasers, and if the purchasers have suffered by the acts of the proprie tors, it would be very unjust that those purchasers who were not proprietors should be indemnified, while no remedy was provided for those who were proprietors, but their loss increased by the indemnity which they were held to aid in giving to those who were purchasers with themselves. This con struction would be equally inconsistent with the language of the instrument and the justice of the case, and cannot be supposed to have been the intention of the contracting parties.
We think it therefore very clear, that if the subscribers to this instrument contemplated a contract between two parties, they intended that those parties should be the purchasers of -pews on one side and the proprietors of the house on the other. We have already seen that several of the defendants were both purchasers and proprietors. If this be the true construction of this contract, is it valid ? Can it be enforced ? If the plaintiffs could recover, in what manner would the) distribute the amount of the judgment recovered ? In what proportion would each one claim ? If the defendants were held to pay damages for a violation of this agreement, in one character, some of them might recover back a portion of it in another. But it is a first principle, that in whatever different capacities a person may act, he never can contract with himself, nor maintain an action against himself.[1] He can in no form be both obligor and obligee.
*323 The defendants’ counsel suggested a different construction of the instrument, which may be adopted without doing violence to the language, on which it may be supported and enforced consistently with the principles of the law. It is, that although it is probable that the signers of the instrument, if they had any clear idea of the difficulty which they wished to have adjusted, viewed it as a controversy between the two classes of persons before described; yet having reference to these differences, they well might all join in one submission of their several claims, growing out of one general transaction. Whether this instrument will admit of this construction and may be considered the several obligation of each signer, it is not necessary nor proper for us now to determine. The case of Winter v. White, 1 Brod. & Bing. 350, cited by the defendants’ counsel, is an authority strongly tending to support this view of the case. And although the learned arbitrator, in some parts of his award, seemed to view the controversy as one between the purchasers of pews and the builders of the house, yet in others he recognised the claims of individuals, and awarded severally for and against persons of the one class and the other.
Upon the whole", we are satisfied that the construction ol this agreement contended for by the plaintiffs’ counsel is not a sound one ; that if it be viewed as a contract between the purchasers of pews and the builders of the house, it cannot be en forced ; and that the plaintiffs are not entitled to recover in this action.
But if the agreement were a valid one and such as would support this action, yet the release relied upon by the defendants would bar it. This release, signed by ten of the plaintiffs, recites that the action was commenced and carried on in thei: names without their consent; that they disavow it, and authorize an agent to discontinue it, or cause their names to be stricken from the writ; and contains a full release and discnarge of the action and the cause of action.
*324 Tlie plaintiffs’ counsel contends that this release was a Iraud upon th® other plaintiffs and opght to be set aside.
Courts of law recognise assignments of choses in action, and protect the equitable rights of the assignees. An action may be maintained in the name of the assignor for the benefit of the assignee.
The assignor, by the assignment, gives authority to the assignee to use his name in any legal proceedings which, .nay become necessary to give full effect to the assignment. The assignor becomes the trustee of the assignee, and a release made by him after notice of the assignment would be a fraud upon the assignee, and would not defeat an action brought for the benefit of the latter in the name of the former.[1] These well settled principles are recognised and commented upon in many of the cases cited by the plaintiffs’ counsel.
In cases of trust the cestui que trust may have an action in the name of the trustee, who cannot without a breach of trust release it. This principle applies to cases where one person, to enforce his equitable rights, is obliged to sue in the name of another, who has no interest in the suit. Of this description are the cases of Payne v. Rogers, 1 Doug. 407, and Doe on demise of Locke v. Franklin, 7 Taunt. 9.
If one of several partners, or other joint owners of a chose in action, assign his interest in it to the other partners or owners, the assignment will be recognised in law, and after notice of it the debtors cannot rightfully pay the assignor, nor can he give a valid discharge of the debt. The cases of Mountstephen v. Brooke, 1 Chitty’s R. 390, and Arton et al. v. Booth, 4 Moore, 192, were decided upon this principle.
The cases cited in the argument, upon this point, clearly establish the doctrine, that when the plaintiffs are mere trustees, they cannot discharge the actions to the injury of cestui que trusts. But none of them extend to cases where the plaintiff maintains the action in his own right and has a direct interest in the judgment. Of this latter description is the case at bar. The plaintiffs sue in their own right. They *325 are all equally liable for costs ; and each of them is directly interested in the judgment.
It cannot be inferred from the written agreement, that it was a part of the contract that one portion of the parties to it should have authority to use the names of the others without their consent. We can see nothing to distinguish this from an ordinary joint contract in which one of several may receive satisfaction for the whole and give a valid discharge of the obligation.[1]
If one partner or joint contractor unjustly refuses to suffer his name to be used in a joint action, or receives satisfaction, or releases the action to the injury of the others, they may have a remedy against him by a special action on the case. Wilson v. Mower, 5 Mass. R. 411
In England, when a nominal plaintiff, or one of several plaintiffs, releases an action in fraud of the party m interest, the court directly interfere and set aside the release.[2] But in this State the courts never have exercised this power. The release may be avoided if fraudulent, but the question of fraud can only be tried by jury.* In the case at bar, the question was properly submitted to the jury, and we think there is no reason to complain of their verdict.
Judgment for the defendants.

 See Moffat v. Van Mullingen, 2 Chitty’s R. 539; Bosanquet v. Wray, 6 Taunt. 597; S. C. 2 Marshall, 319; Harvey v. Kay, 9 Barn. & Cr1’ *' n. 356 *323 Holmes v. Higgins, 1 Barn. & Cressw. 74; S. C. 2 Dowl. &. Ryl. 196; Teague v. Hubbard, 8 Barn. & Cressw. 345; Milburn v. Codd, 7 Barn. & Cressw 419; Collyer on Partn. 383.

 See Hackett v. Martin, 8 Greeul. 77; Mathews v. Houghton, 1 Fairfield 420; Welch v. Mandeville, 1 Wheaton, 233; S. C. 5 Wheaton, 277.

 See Collyer on Partn. 258, 259, 379, 380; Smith v. Stone, 4 Gill & Johns. 310; Bruen v. Marquand, 17 Johns. R. 58; Napier v. M‘Leod, 9 Wendell, 120; Evernghim v. Ensworth, 7 Wendell, 326; Halls v. Coe, 4 M'Cord, 136, Barker v. Richardson, 1 Younge & Jerv. 365, 366; 3 Kent’s Comm. (3d ed.) 48, 49.

 See Barker v. Richardson, 1 Younge & Jerv. 365; Collyer on Partn. 380.

 See Loring et al. v. Brackett, 3 Pick. 403.