## Timothy Wiggin *versus* Frederic Tudor *et al.*

On the 2d of February, 1835, the plaintiff, having a large claim against the defend-ant T., and being also the assignee of two mortgages made by T. of certain real estate, entered under the mortgages for condition broken, and executed a lease of the estate to T. and G., the defendants, for the term of three years from that day, at a rent payable quarterly, which lease was to become void whenever the mortga-ges should be redeemed. On the 9th of November, 1837, the plaintiff and T. en-tered into an agreement, by which, after the recital, " whereas there is now stand-ing between said parties an account current upon which the plaintiff claims a large balance as due to him, and whereas a compromise of all claims between said par-ties has been agreed to upon the following terms," T. agrees that he will convey to trustees all his interest in the estate, to be held by the trustees for the term of three years from the 2d of February, 1838, and if at or before the expiration of that term T. shall pay the plaintiff $ 100,000 and any arrears of interest there may be, as after provided; the trustees shall reconvey the estate to T., but if he shall fail to pay said sum as aforesaid, then the trustees shall convey the estate to the plaintiff in fee simple ; and it is agreed that T. shall remain in possession of the estate during said term of three years, unless he shall make default in the payment of the interest money ; and T agrees that he will pay $ 5000 *per annum* in quarterly payments, the first of which shall be on the 2d of May, 1838, as and for the inter-est of that portion of the debt which is intended to be secured by the aforesaid conveyance ; and that if at the end of said three years any part of said interest money shall be unpaid, then T. shall not be permitted to redeem the estate without paying up all such arrears in addition to said $ 100,000 ; that, on receiving from the plaintiff a release, he will deliver to the plaintiff a note, signed by T. and in-dorsed by G., for $ 5000, payable in one year from the 2d of February, 1838, with interest, and will pay the plaintiff $ 5000 in cash ; that one of the trustees shall collect the rents during the three years, and shall apply the same, so far as may be necessary, to the payment of the $ 5000 *per annum ;* that he will make the con-veyance to the trustees, and deliver to the plaintiff the indorsed note for $ 5000, and pay him the $ 5000 in cash, on or before the 2d of February, 1838, the plaintiff delivering his release at the same time ; and in case of T.'s neglect to pay the in-terest money punctually, it shall be the duty of the trustees, after thirty days' no-tice to T., to convey the estate to the plaintiff, without any further right of re-demption ; and the plaintiff agrees, that upon the delivery of the conveyance to the trustees, and of the note for $ 5000, and of the $ 5000 in cash, he will deliver to T. a full release of all claims which he holds against him, and will discharge the mortgages, provided the title to the estate be found in all other respects free from all incumbrances, or will deliver to the trustees as an escrow a release of the mort-gages, to be delivered to T. when he redeems the mortgaged premises. On the 2d of February, 1838, T. delivered a deed of the estate to the trustees, and paid the plaintiff the $ 5000 in cash, and delivered to him the indorsed note for $ 5000, and the plaintiff delivered to T. an instrument under seal, in which he says, that for the purpose of carrying into effect the agreement of the ninth of November and effecting the compromise of the claims which by said agreement are intended to be compromised, he does hereby release and discharge T. from all claims which at the date of said agreement he held against T., which, by said agreement, he stipu-lated to release, and from none other whatsoever ; provided, that nothing herein contained shall be taken to release G. from any claim which the plaintiff has

against him, unless said agreement requires him to release G. as well as T. On the 9th of November, 1837, the date of the agreement, the rent for the quarter ending on the 2d of the same November had not been paid, and the defendants refused to pay the same, and likewise refused to pay the succeeding quarter's rent, falling due on the 2d of February, 1838. It was *held*, that the release discharged T. from liability for either quarter's rent, and that the release of T. was, in legal operation, a discharge of G., the other lessee.

THIS was an action to recover a quarter's rent of certain real estate in Boston, called and known as Tudor's building.

On a case stated it appeared, that on the 21st of February, 1831, Tudor conveyed the same real estate to J. A. Lowell, in mortgage, to secure the repayment of $ 10,000, in three years from the 1st of January, 1832 ; and that on the 28th of February, 1832, he mortgaged the same estate to Lowell to secure the repayment of the further sum of $ 25,000, in three years from that date.

On the 20th of November, 1833, Tudor conveyed the same estate to Robert Hooper junior, the agent and trustee of the plaintiff, in mortgage, as collateral security for a bond bearing the same date, in the penalty of $ 50,000. The condition of the bond was, that Tudor should pay, with interest, whatever sum might be found due to the plaintiff, in five years after a balance of accounts should be struck and notice thereof given to Tudor.

In December, 1834, the plaintiff rendered to Tudor an account, in which the balance claimed by the plaintiff was £ 20,473 sterling.

On the 31st of January, 1835, Lowell assigned his two mortgages, together with the debts secured thereby, to the plaintiff; and on the same day the plaintiff entered on the estate, for condition broken, under these two mortgages, pursuant to an arrangement between the parties.

On the 2d of February, 1835, the plaintiff demised the estate to Tudor and Robert H. Gardiner, the defendants, for the term of three years, at an annual rent of $ 5000, payable quarterly in sums of $ 1250, on the second day of May, August, November, and February, in each year. The indenture of lease recites the entry under the two mortgages assigned to the plaintiff ; and it provides, that the lessees shall not assign the lease, except by one of the lessees to the other,

if he sees fit, and that the lease shall become void whenever the two mortgages shall be redeemed.

On the 9th of November, 1837, the plaintiff and Tudor entered into an agreement, in part, as follows : " Whereas there is now standing between said parties an account current, upon which the said Wiggin claims a large balance as due to him ; and whereas a compromise of all claims between said parties has been agreed to upon the following terms : 1. Said Tudor agrees, that he will convey to Robert Hooper junior, and James W. Fenno, as trustees, all his interest in the estate in Court street, called Tudor's building, by a warranty deed with the usual covenants, which estate is subject to two mortgages, nominally for $86,000, but somewhat reduced by payments on account thereof, now held by said Wiggin or his agent, &c. 2. Said Tudor agrees, that he will convey to the same trustees all the interest which he now has in an estate in Commerce street, in New Orleans, by a warranty deed with the usual covenants, which estate is subject to a mortgage now held by said Wiggin, or his agent, for $20,000, &c. The said two estates are to be held by said trustees for the full term of three years from the second day of February next, and if on or before that time be fully expired the said Tudor shall pay to said Wiggin or his agent, the sum of $100,000, and any arrears of interest there may be, as provided in article third, then the trustees shall reconvey the said estates to said Tudor or his assigns ; but if he shall fail to pay said sum as aforesaid, then the said trustees shall convey the said estates to said Wiggin or his assigns in fee simple, &c. It is understood and agreed, that the said estates are to remain in possession of said Tudor during the aforesaid term of three years, unless he shall make default in the payment of the interest money hereinafter agreed to be paid by him, as provided in the next following article, &c. 3. Said Tudor agrees, that he will pay $5000 per annum in quarterly payments, the first of which shall be on the second day of May now next, as and for the interest of that portion of the debt claimed by said Wiggin, which is intended to be secured by the aforesaid conveyances ; and that if at the end of said three years any part of said interest money shall be unpaid, then said Tudor shall not be permitted to re-

deem said estates without paying up all such arrears in addition to said $100,000. But this provision is not to deprive said Wiggin of any other remedy he may have to recover said interest. 4. Said Tudor agrees, that on receiving from said Wiggin the release hereinafter mentioned, he will deliver to said Wiggin, or his agent, his note for $5000, indorsed by Robert H. Gardiner, payable in one year from the second day of February next, with interest thereon, at five per cent *per annum*, &c. 5. That on receiving the release aforesaid he will pay in cash to said Wiggin, or his agent, the sum of $5000. 6. Said Tudor agrees, that the rents of Tudor's building shall be collected by James W. Fenno during the three years aforesaid, and that said Fenno shall apply the said rents, so far as may be necessary for that purpose, to the payment of the said $5000 *per annum* thirdly above stipulated to be paid by said Tudor. 7. Said Tudor agrees, that he will make the conveyances of the two estates, &c. deliver to said Hooper the note aforesaid, and pay the $5000 in cash aforesaid to said Wiggin, or his agent, on or before the second day of February next, he, said Wiggin, by himself or his agent, delivering to said Tudor the release aforesaid at the same time. 8. In case of said Tudor's neglect to pay the interest money above mentioned punctually as above provided, it shall be the duty of the trustees, after the interest money shall have been in arrear for the space of thirty days after notice of such default is given to said Tudor, in writing, to deliver absolute deeds of the two estates aforesaid, to the said Wiggin, &c. without any further right of redemption. . . . . . 11. And the said Wiggin agrees, that upon the delivery by said Tudor of the conveyances aforesaid, and of the note of $5000 aforesaid, and of the $5000 in cash aforesaid, he will execute and deliver to said Tudor a full release of all claims which he holds against said Tudor, and that as soon as the said Tudor shall have conveyed to said trustees the estates aforesaid, he will discharge the mortgages thereupon which he now holds, provided the title to said estates be found in all other respects free and clear from all incumbrances, or will at his election deliver to the trustees as an escrow, a release of the said mortgages, to be delivered to said Tudor and to take effect when he redeems the mortgaged premises according to this agreement."

37 *

On the 2d of February, 1838, Tudor executed and delivered deeds of the two estates to Hooper and Fenno, the trustees, and paid to the plaintiff's agent $ 5000 in cash, and gave him his note for $ 5000, indorsed by Gardiner. At the same time the plaintiff, by his agent, executed and delivered to Tudor an instrument under seal, which, after reciting the agreement of the 9th of November, 1837, proceeds as follows : " Now, for the purpose of carrying the said agreement into effect, and doing that which on the part of the said Wiggin is to be done under and pursuant to the said articles of agreement, and effecting the compromise of the claims which by the said agreement are intended to be compromised, the said Wiggin does hereby release and discharge the said Tudor of and from all claims which, at the date of the said articles of agreement, the said Wiggin held against the said Tudor, which, by the said articles of agreement, the said Wiggin stipulated to release, and from none other whatsoever. Provided, however, that nothing herein contained shall be deemed or taken to release Robert H. Gardiner of or from any claim or claims which the said Wiggin has against him, unless the said articles of agreement do, under all the circumstances under which the same were entered into, require the said Wiggin to release him, the said Gardiner, as well as the said Tudor, and if they do not so require, the said Wiggin reserves to himself the right to sue the said Gardiner, and to prosecute to final judgment any suit which he may choose to prosecute against him, and to take all necessary legal means to commence and prosecute the same with effect, notwithstanding this release." Tudor protested against receiving this instrument as a compliance with the agreement of the ninth of November, objecting to the above proviso ; but he took the same under protest, reserving all his and Gardiner's rights.

. Up to the 2d of February, 1838, Tudor continued in possession of Tudor's building. He paid the rent reserved in the lease as it became due, until the rent for the quarter ending on the 2d of November, 1837, became due. This quarter's rent the defendants, after the execution of the agreement of the 9th of November, refused to pay, and this action was brought to recover the same.

Another action was brought to recover the rent of the succeeding quarter, ending on the 2d of February, 1838 ; which was submitted to the opinion of the Court on the same facts.

Upon these facts, and such just inferences as the Court should think warranted, judgment was to be rendered for the plaintiff or the defendants, in either or both of the actions, as the law should require.

*C. P. Curtis* and *B. R. Curtis*, for the plaintiff, cited as to the construction of the release, *Lyman* v. *Clark*, 9 Mass. R. 238 ; *Solly* v. *Forbes*, 2 Brod. & Bingh. 38 ; *Butcher* v. *Butcher*, 1 New Rep. 113 ; *Payler* v. *Homersham*, 4 Maule & Selw. 423 ; *Simons* v. *Johnson*, 3 Barn. & Adolph. 175 , *Jackson* v. *Stackhouse*, 1 Cowen, 122 ; and to the point, that Gardiner could not take advantage of it, *Storer* v. *Gordon*, 3 Maule & Selw. 308 ; *Ex parte Gifford*, 6 Ves. 808 ; *Solly* v. *Forbes*, 2 Brod. & Bingh. 38.

*Bartlett*, for the defendants.

SHAW C. J. delivered the opinion of the Court. It is not stated in the facts agreed, whether the form of action is covenant or debt, nor is it perhaps very material ; it is an action for a quarter's rent, claimed to be due on a lease admitted to have been executed by both of the defendants. The question whether this rent is due, depends upon the construction of the release and agreement, set forth in the case stated. To ascertain that construction it is necessary to consider the terms of the agreement, the recitals contained in it, and the existing facts and circumstances, constituting the relations, in which the parties stood towards each other, and to which those agreements and recitals refer, either in terms or by necessary implication.

In looking at the lease, dated the 2d of February, 1835, and the recitals contained in it, it will appear that Wiggin held two mortgages on the estate called Tudor's building, which were then due, that he had entered for condition broken, by the consent of the mortgagor, and it follows as a legal consequence, that the mortgage would be foreclosed and the right of redemption gone, if not redeemed within three years from that day, by February 2d, 1838. The lease is for the rent of $ 5000 a year for the same term of three years, with a proviso, that

Wiggin
*v.*
Tudor.

Jan. 24th,
1840

Feb. 10th,
1840.

the lease should become void, whenever the mortgages therein mentioned, should be redeemed. There was also a provision, that the lessees should not assign the lease, except by one of the lessees to the other, if he saw fit. They were therefore themselves to become debtors, for the payment of these quarterly rents, to the plaintiff, being mortgagee, until redemption, that is, until payment of the mortgage debt.

The legal relation of a mortgagee in possession, as well after entry for foreclosure as before, is, that he is to account for the rents and profits as part payment of the mortgage debt, to be applied in the first instance to the payment of the interest, and if more than sufficient for that purpose, then to be applied *pro tanto*, to the reduction of the principal. But even if the mortgaged estate should not be redeemed, and if after foreclosure the mortgagee should bring his action on the personal security, on the ground that the mortgaged property was not equal in value to the debt, and in order to recover the difference, the rents and profits received by the mortgagee before foreclosure would be added to the value of the mortgaged premises, in determining what part of the mortgage debt had been paid by the mortgagee. Such being the relation in which the parties stood, and such the nature and provisions of this lease, it seems apparent that the lease was incident to the mortgage, was intended as a means of enabling the mortgagee to obtain, in part, his mortgage debt, and that as between mortgagor and mortgagee, it must be deemed incidental to, and dependent upon the mortgage, and as a collateral security, like the mortgage deed itself, for the payment of the interest and principal of the mortgage debt. As a necessary consequence of this character, it seems to follow, that whatever would satisfy and discharge the mortgage, would determine the lease.

Still the question recurs, upon the agreement of the 9th of November, 1837, by which the whole debt due on the mortgages, for balance of account and all claims, was consolidated and liquidated at the sum of $110,000. By this agreement, it was provided, that upon the payment of that sum, in the manner therein stipulated, to wit, $10,000 in cash and notes, and another species of security by deeds of trust, on the same mortgaged estate in Boston, and another estate in New Orleans,

for $ 100,000, all previous mortgage debts should be released and discharged. The provision in effect was, that the mortgaged estate should be discharged, with one reservation only, in relation to the title, which was, " that in case of any intervening incumbrance upon the title, the legal estate created by the original mortgage might be kept on foot, as a protection to the legal title, intended to be made to the trustees. Such agreement, therefore, when executed, was to be a complete satisfaction and discharge of all the debts secured by the mortgages, of all personal and collateral securities, given for the same debt, and of the mortgaged estate itself, unless it should be necessary to keep up the bare legal title, for the protection of the new security to be given, which exception does not affect the present question. Then the question is, whether the parties intended to compromise and consolidate the whole debt to be paid and secured, at $ 110,000, without further payment or accounting on the one side or the other, or whether any further rents and profits were to be paid on the one side and accounted for on the other, or any interest to be computed after that day. There being nothing explicit in the agreement on the subject, the question, depending upon construction and legal inferences, is not without its difficulties ; but the Court are of opinion, that it was the intention of the parties to consolidate and liquidate the whole debt, by a compromise, at the sum of $ 110,000 as of that day, and thereby to dispense with all computations of the actual sum due to the mortgagee, or of the sums received by him, by way of rents and profits, in discharge of interest and principal. As far as rent had been received, that had already gone in satisfaction of the debt, by means of which the debt was reduced *pro tanto*, and a compromise and adjustment of the debt was an effectual accounting for these rents. All the rents therefore previously received on this lease, were to be considered as accounted for and to be retained by the plaintiff as mortgagee. The question can therefore affect only the rents not received at the time of the settlement.

It is a well settled rule of equity and convenience, upon taking an account with a view to the redemption of a mortgage, that if the mortgagor himself stands responsible for the

VOL. XXIII.

rents, as where he has been in under a lease, the mortgagee is to account only for such rents, as he has actually received. If he had let the premises to a third person, a different rule might prevail, and he might be responsible for due diligence in col lecting the rents which he might have received. But where the mortgagor himself, on coming to redeem, stands responsible for the rents, the mortgagee accounts only for what he has received. And in such case it would be idle for the mortgagee to demand a sum of the mortgagor by way of rents and profits, which he must immediately account for, towards his mortgage debt. The payment therefore of his mortgage debt, is a discharge of all further claim of rents and profits of the mortgagor.

The Court are of opinion, upon the agreement, that the parties intended this compromise and consolidation of the mortgage, as a substitute for an account, and that all debts on the one side and allowances on the other, must be regarded as embraced in it, in the same manner as they would have been embraced in such an account. It is therefore immaterial, whether the balance of account actually due to Wiggin, was much larger than the amount embraced in the compromise; or not, as the whole of such balance, together with the mortgage debts, of which Wiggin was the assignee, were intended to be embraced in it. Had the sum of $110,000 been actually then paid, and a release of the mortgage debts executed, similar to the one relied on, we have no doubt that it would have been a bar to this claim of rent. It would have been a release of the debt for the quarter's rent then due, by force of the terms of the release itself; and it would have been a discharge in equity, because the mortgagee would be no longer entitled to receive any rents and profits of the mortgagor. It would be a discharge of the rent to become due on the 2d of February, by the operation of the clause of defeasance, as the time would thereby expire. And we think, that in like manner, if the agreement had been made to consolidate the amount at $110,000 instead of taking an account, and it had been provided, that upon the payment of that sum in cash, on or before the 2d of February, the mortgages should be discharged, and it should be paid and the mortgages discharged accordingly

the claims for rent due both on the 2d of November and the 2d of February, would be discharged, unless there were some stipulation in regard to the payment of interest, or accounting for rents and profits. And we can perceive no substantial difference between the payment in cash and the payment in the special manner stipulated for by the agreement. It was the creation of a new security, and a discharge and redemption of the old mortgages, and there was no stipulation, that in case Tudor should take the whole time to the 2d of February, any interest should be allowed in the mean time, on the $110,000. This being the express provision of the contract, there is no room to inquire whether it was equitable or not. The Court are therefore of opinion, that upon making the payment and giving the security contemplated, on the 2d of February, within the time limited, and upon the release of the mortgage, made in conformity with that agreement, the claim of the plaintiff upon this lease was discharged. Had the mortgaged premises been let to a third person for the same term, it might have presented a different question. It might perhaps have been plausibly argued, that the amount was consolidated at $110,000, leaving the mortgagee to receive to his own use, the rent then actually due him, and that which would become due on an absolute and unconditional contract to himself. It might with more color be contended, that in the absence of any express agreement either that the mortgagee should receive such rents to his own use or account for them, as he was to receive them in the first instance, he was to receive them to his own use. But in this case, the rents, if to be paid at all, were to be paid by the mortgagor himself. This agreement was made on the 9th of November, seven days after the rent now sued for, became due. No provision was made for its payment, or for the payment of any further interest on the liquidated mortgage debt, for which the rents of the mortgaged estate would be the appropriate fund. The words of the release apply in terms to the rent due in November, being a claim which the plaintiff then held against Tudor. And we consider that the same words. of release, are broad enough to include the quarter's rent due in February. Supposing the most favorable construction for the plaintiff, that the release was intended to take ef-

fect at the then future time at which it should be executed, it could not be postponed further than the 2d of February, and it was then to be executed and take effect. But the quarter's rent was then to be due, and being due when the release was to be executed and when it was in fact executed, it in terms released it, as a claim or demand then due. And this renders it unnecessary to consider whether such release would discharge covenants not broken. The words of this release are therefore directly applicable to both of these demands, and are suf·ficient in their legal operation and effect, to discharge them; and the Court are of opinion that there is nothing in the recitals or stipulations of the agreement, or in the relations of the parties, to control or restrain them.

Several cases were cited to show that the general words of a release will be controlled and limited by the recitals, or by any other part of the instrument, applied to the subject matter, by which it is made manifestly to appear to be the intent of the parties, that it shall be so limited. *Lyman* v. *Clark*, 9 Mass. R. 238; *Simons* v. *Johnson*, 3 Barn. & Adolph. 175. This principle is extremely well settled by these and a great variety of cases; but we can perceive nothing in the terms, recitals or subject matter of this agreement, indicating that it was the intent of the parties, that these arrears of rent should be paid, in addition to the $110,000, for the redemption of the mortgages.

But it was contended that this was a release to Tudor alone, and not a discharge to the other lessee; but we think this position cannot be maintained. The rule of law is, that a release of one of two joint or joint and several debtors, is in legal operation a discharge of both, because the debt is entire, and when once satisfied or released, can no longer be enforced against any party to it. *Tuckerman* v. *Newhall*, 17 Mass. R. 581. Being a discharge of the debt and claim for rent, by the release to Tudor, it necessarily discharges Gardiner by operation of law. It was argued upon the authority of *Solly* v. *Forbes*, 2 Brod. & Bingh. 46, that a release of one of two joint debtors was not a release of both. But we think that case, rightly understood, establishes no such principle. A compromise was made with one of two partners, and a sum received in full sat-

ısfaction of all claims against him.   In that case, although the word " release " was used, the Court proceeded expressly on the ground that it was not used technically ; that taken in connexion with the whole instrument, it was not intended to be used technically ; that it was not a release of the debt, but only of all right to charge the person or property of that party, reserving to the plaintiff all claims against the other party, and expressly reserving the right to commence and prosecute a joint action as far as necessary, against both partners, so as legally to avail himself of the responsibility of the other partner. It was therefore in legal effect, not a release, either of the debt, or of the party, but an agreement not to charge the person or property of the partner with whom the composition was made, and these were the grounds on which the case was decided.

But in the present case, if it was intended by the agreement to release Tudor, it must be because it was intended that the arrears of rent should not be claimed against the mortgagor, and of course, if it was intended to release the rent, the release of Tudor, by its legal operation, was a release of Gardiner.

On these grounds the Court are of opinion, that the plaintiff is not entitled to recover either the rent due November 2d, or that due February 2d, and that a nonsuit be entered in both actions.