Argued at Pendleton October 31, 1922, reversed and remanded January 16, rehearing denied February 6, 1923.

## ANDERSON v. EAST OREGON LUMBER COMPANY.

### (211 Pac. 937.)

**Parties—Demurrer Because of Defective Parties Plaintiff must be Disregarded.**

1. A demurrer on the ground that there are "defective parties plaintiff" is not a demurrer on the ground of "defect of parties plaintiff" permitted by Section 68, Or. L., but must be disregarded, so that the defendant is *held* to have waived the nonjoinder of other parties to the contract sued on.

**Contracts—Parties—Contract by Six to Pile Lumber Held Joint.**

2. A contract between a lumber company, as party of the first part, and six individuals, as parties of the second part, to pile the lumber of the party of the first part at a specified price per one thousand feet, is a joint contract by the six individuals, which gives rise only to a joint cause of action, so that suit thereon must be brought by all jointly unless the defendant waives the joinder.

**Parties—Waiver of Objection to Suit by One Joint Contractor Does not Affect Substantial Relationship.**

3. A defendant who waives the objection that a suit to enforce a joint contract was brought by only one contractor does not thereby affect the substantial rights of the parties under the contract, but the plaintiff can still recover only by showing damage to the joint contractors as a whole.

**Damages—Joint Contractor must Show Damage Accruing to All Contracting Parties.**

4. To recover for breach of a joint contract for the piling of lumber by six individuals, the plaintiff must show that defendant's breach resulted in damage to all of the contracting parties, and cannot recover merely by showing that he personally was prevented from performing his part of the contract, and thereby from receiving any share in the proceeds thereof.

**Contracts—Complaint for Discharge upon Joint Contract Held not to Show Breach of Contract Rights.**

5. A complaint alleging that plaintiff and five others had made a joint contract to pile lumber for defendant, and that defendant had discharged plaintiff and prevented him from performing any work under the contract, does not show a breach by defendant resulting in damage to the joint contractors as a body, since they were entitled to the contract price for the work, regardless of the individuals who performed it, or of the number engaged in the work, and plaintiff's only rights are under his agreement with his co-contractors for the share of the contract price he was to receive.

From Wallowa: J. W. Knowles, Judge.

In Banc.

REVERSED AND REMANDED.    REHEARING DENIED.

For appellant there was a brief and oral arguments by *Mr. Daniel Boyd* and *Mr. J. A. Burleigh.*

For respondent there was a brief over the name of *Messrs. Nichols, Hallock & Donald,* with an oral argument by *Mr. Blaine Hallock.*

BURNETT, J.—It is agreed by both parties that the defendant as part of the first part and the plaintiff and five others as parties of the second part executed a written contract of which the following is a copy:

"This agreement, made and entered into in duplicate this 1st day of February, 1921, wherein East

Oregon Lumber Company is party of the first part, and Daniel Sword, G. S. Anderson, Ole Holland, Emil Edwardson, Pete Burreson and Ole Burreson are parties of the second part,

"Witnesseth: That the consideration of this agreement is the mutual covenants entered into and agreed to by the parties of this agreement:—

"The parties of the second part agree with the party of the first part that they will pile in the yard of the East Oregon Lumber Company or on the dry kiln trucks, as the East Oregon Lumber Company may designate, all the lumber manufactured at their mill situated in Enterprise, Oregon, from February 1, 1921, to January 1, 1922, for the sum of forty-seven and one-half cents (47½¢) per thousand feet (log scale plus twenty per cent (20%) as tallied on the log deck).

"The party of the first part further agrees to pay the party of the second part ten cents (10¢) per thousand pieces for the piling of lath, either in the yard or on kiln trucks as designated by the party of the first part. All of the piling shall be done in a workmanlike manner and as may be directed by the party of the first part.

"The party of the first part agrees and does hereby contract with the parties of the second part to perform the services and labor upon the terms and conditions herein named, and agrees to pay the consideration above named in the manner as follows, to wit:

"The amount of lumber piled from the 1st to the 15th, inclusive, of every month shall be paid for on the 25th of the month, and the amount of lumber piled from the 16th to the last day, inclusive, of the month shall be paid for on the 10th of the month following, *except* that the party of the first part shall have a right, and they shall reserve and withhold from the parties of the second part the total earnings for a period of ten (10) days, as a guarantee by the parties of the second part that they will perform their part of this agreement in full, according to the terms herein named; and it is mutually understood and agreed that such sums of money as earnings re-

tained by said East Oregon Lumber Company shall be considered as damages due and owing said East Oregon Lumber Company for failure of the party of the second part in any way to fulfill the obligations of this contract.

"It is further agreed and understood that the price herein named will be revised at any time there is a change in the market wage.

"It is further agreed and understood that in case the parties of the second part shall fail to pile the lumber, the party of the first part may employ men to such a number as will be necessary to pile the lumber as herein set out, and to pay such men at the reasonable market wage for such work, and charge the items paid out for such work to the parties of the second part herein.

"It is further mutually agreed and understood that this contract shall not be altered or added to, except in writing, and that such writing shall be signed by all the parties hereto.

"In testimony whereof, the parties have hereunto set their hands and seals to this agreement in duplicate, this —— day of February, 1921.

"(Signed) EAST OREGON LUMBER COMPANY,
"By R. E. GRAHAM,
"Party of the First Part.
"DANIEL SWORD,
"GEORGE S. ANDERSON,
"OLE HOLLAND,
"EMIL EDWARDSON,
"PETER BURRESON,
"OLE BURRESON,
"Parties of the Second Part."

The complaint recites the corporate character of the defendant, pleads the contract according to its legal effect and likewise according to its tenor by attaching a copy as an exhibit, and then says in substance that pursuant to the terms of said agreement the plaintiff entered upon the performance of the labor of piling lumber about February 1, 1921, and con-

tinued until April 14th of that year, at which time the defendant discharged him and failed to continue him in its employ in the capacity indicated by the contract or otherwise or at all, and refused to pay him the contract price for the services set forth in the agreement or any other price or compensation after the date of his discharge, although the plaintiff has been ready, able and willing to continue his employment. The complaint then says in substance that if the plaintiff had been permitted to continue in the employment of the defendant during the full period of the contract, he would have earned $9 per day or $234 for a month of twenty-six working days; and that as a direct result of the wrongful and unlawful act of the defendant in discharging him he was deprived of those moneys to his damage in the sum of $1,989.

According to the abstract, the defendant demurred to the complaint in these words:

"That there are defective parties, plaintiff.

"That the same does not state facts sufficient to constitute a cause for action."

The demurrer was overruled and the defendant answered, admitting its own corporate character as well as the execution of the contract already quoted, but denying all of the other allegations of the complaint except as thereafter specified. The answer charges that the plaintiff voluntarily abandoned the work under the contract owing to a dispute with his fellow contractors; that the plaintiff and all parties of the second part to the contract have been paid in full for all lumber piled by them; that the contract is a joint agreement; and that the other parties named therein should be made parties plaintiff. The reply

admits the contract and attempts to draw certain legal conclusions from the same.

When the case came on for trial before the jury, the defendant seasonably objected to taking any testimony, on the ground that the complaint does not state facts sufficient to constitute a cause of action, specifying nonjoinder of parties plaintiff, in that the other parties, signers of the contract, naming them, have not been joined as parties plaintiff with the present plaintiff; that the contract is void for want of mutuality; that the plaintiff is not an employee but an independent contractor, in consequence of which there could be no breach of the contract as alleged in the complaint and the plaintiff has no right to bring the action; and lastly, that it is impossible to prove any damages as set out in the complaint. The objection was overruled. A motion for nonsuit at the close of plaintiff's case, for practically the same reasons, was denied by the court. The case went to judgment in favor of the plaintiff, and the defendant appealed.

1. Under Section 68, Or. L., when the objection appears on the face of the complaint the defendant may demur to the same because "there is a defect of parties plaintiff or defendant," or "the complaint does not state facts sufficient to constitute a cause of action." Apparently there was an attempt to demur because the parties plaintiff were too few, but, owing possibly to a clerical error, the demurrer does not raise the point. "Defective parties" is a misnomer, and it does not appear whether the parties were "defective" in mind, body or estate. That branch of the demurrer must therefore be disregarded, and under Section 72, Or. L., we must consider that the

defendant waived the nonjoinder of the other parties to the contract.'

2. It is clear, however, that the men who agreed to pile the lumber are joint contractors. There was no stipulation for their personal services. By what means they accomplished the work was of no moment to .the defendant. Results only were contemplated, and the price per thousand feet of lumber or thousand feet of lath was to be paid to the whole six contracting parties as a distinct contracting entity. No several rights are defined or mentioned in the contract. All such are merged in the joint stipulation. If it be true that the defendant prevented the present plaintiff from working in piling the lumber, it would be a breach of the contract, for only by that contract in which he joined with others, could the plaintiff have any right to work at all. The breach of the contract was an offense against the joint combination of contracting parties. The other five men had a right to the assistance of their co-contracting party in the prosecution of the work, and the exclusion of him from the work, being a breach of the joint contract by which alone he was entitled to work for the defendant, raised a cause of action accruing to them jointly.

3. The waiver of the defect of parties plaintiff goes no further than to admit that one of the joint contractors can litigate the question of the breach of the joint contract and bind his co-contractors by the result. The act of the defendant does not disturb the relationship existing between the co-contractors. It does not split the cause of action. As said in Section 62, Bliss on Code Pleading (3 ed.):

"There being no several interest, the whole right must be vindicated at once, and this could not be

106 Or.—30

done without the presence, and only on the request, of all interested in that right—that is, all the living joint obligees. Although one of the claimants or obligees, has, in theory, a right to the whole, yet every other claimant has the same right. A judgment in favor of one for the whole claim would deprive the others of their right; a judgment for a part would be inconsistent with the idea of a joint right; hence all must recover, and jointly, or none. The adjustment among themselves required a proceeding with which the courts of law had nothing to do; they recognized the joint interest as one interest, with survivorship and other incidents of joint tenancies in real property."

Also, in Pomeroy's Code Remedies (3 ed.), Section 185, it is said:

"When a contract, either sealed, written, or verbal, is made with two or more persons, and their legal interest therein is joint, all the obligees, covenantees, or promisees, if living, and as many as are living, must join as plaintiffs, even though the covenant or promise to them is in terms joint and several. The interest spoken of is not the interest which will be had in the sum of money or other benefit promised when the agreement is performed, but the interest in the contract, the legal, technical interest created by the terms of the very agreement. This rule as to the union of parties plaintiff in an action brought upon a joint contract being thus universal and peremptory, it becomes a matter of the utmost importance to determine when a contract is thus joint; when the rights of the promisees, or their legal interest in the contract, is joint, and not several. In general, if a promise is made to two or more persons, the right is presumptively joint; a several right is the exception. No express joint words, therefore, are necessary, but some words indicating such an interest must be used to create a several right."

In other words, the right of the parties who contracted with the defendant is a joint right. A breach

of the contract gives rise only to a joint cause of action, because co-obligees, like partners, are jointly bound by the acts of each other, as taught by *Clark v. Patton,* 27 Ky. 33 (20 Am. Dec. 303), and *Eastman v. Wright,* 23 Mass. (6 Pick.) 316. The defendant may accept the challenge of a single party and waive the joinder of others in an action which seeks to enforce this joint right at the suit of one of the parties: See, also, *Wiggin* v. *Tudor,* 40 Mass. (23 Pick.) 434; *Weakly* v. *Hall,* 13 Ohio, 167 (42 Am. Dec. 194).

4. The defendant does not, however, by that waiver create a cause of action not included in the contract or arising out of a breach of the contract, and he who would enforce that contract or recover for a breach of it must show a damage accruing to all of the contracting parties jointly. The defendant is not concerned with the disposition of the proceeds of the contract among those with whom it contracted.

5. The complaint does not show any damage whatever to the aggregation of workmen constituting the party of the second part. So far as that is concerned, the plaintiff need not have worked at all in piling lumber and when the work was completed, payment to him of the whole amount due would have bound all his joint contractors and discharged the debt of the defendant. This rests on the same principle as in partnership wherein the act of one partner binds all the other partners. If the whole six of the parties of the second part had continuously labored at the task of piling the lumber until completion, the contract price is all that the joint parties would have received. If the combination was able to complete the work with a less number of workmen or by substituting laborers in their place, so much the better for the combination; but it would not diminish the

plaintiff's share in the proceeds of the contract. The plaintiff's enjoyment of those proceeds depends upon his arrangement with his co-contractors, whatever it was, and that is not disclosed in, or made part of the contract pleaded, by which only the defendant is bound. The complaint does not show that any act of the defendant disturbed any relation existing between the plaintiff and his co-contractors or lessened his share in the profits of the venture accruing to the parties of the second part. Joint rights only are protected by the covenant, and the fallacy of the plaintiff is that he is trying to enforce an alleged several right under a contract involving only joint rights. His individual rights as against the defendant are by his own stipulation merged in the joint contract into which he entered in common with his co-contractors, and are not affected by a breach of the contract, because they are unknown to it. If he had alleged any damage accruing to the combination of co-contractors, the plaintiff might recover as the representative of that combination, but not otherwise. From the proceeds of the joint venture alone could he have acquired any money as a result of his joint contract. Until he shows that some act of the defendant diminished those proceeds to the damage of the joint contractors, as distinguished from him as an individual, he has stated no cause of action for a breach of the contract upon which he relies.

The general demurrer to the complaint should have been sustained. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED. REHEARING DENIED.

HARRIS, J., Dissenting.—I am unable to agree with the conclusion that "the plaintiff might recover

as the representative of that combination, but not otherwise."

This is the situation disclosed by the record: George S. Anderson, Daniel Sword and four others entered into the written agreement quoted in the majority opinion. Under the terms of that agreement Anderson and his associates contracted to pile, for a specified price per thousand feet, all the lumber manufactured by the defendant from February 1, 1921, to January 1, 1922. Anderson, Sword and their four associates piled lumber until April 16, 1921, when Anderson and Sword ceased to work. On the following Monday, April 18th, two new men appeared on the job, stepped into the shoes of Anderson and Sword, and, with the four pilers, continued to work until January 1, 1922, the date of the expiration of the written agreement.

During the period when Anderson and Sword worked, pay checks were delivered to each of the six men twice every month. Each man was paid one sixth of the total amount earned by all. The same practice was followed from April 18, 1921, to January 21, 1922, and each of the six pilers, including the two new men, was twice each month paid one sixth of the total earnings of the six. The combination, including Anderson and Sword, were paid all that was earned by them up to April 16th; and the six men who did the piling from April 18th to January 1st following were paid all that was earned by them.

It is not claimed by anyone that the combination either as it existed until April 16th or as it existed after that date was damaged in the slightest, but, on the contrary, it is impliedly conceded that the combination as such has not been damaged. Consequently, if Anderson and Sword are remediless, it is

utterly futile to remand the case for further proceedings. The two new men appeared on the job in response to telegrams, one man coming from Idaho and the other from the State of Washington. Both were experienced pilers. It is impliedly admitted, and it is probably true, that the combination as it existed after April 16th piled the lumber as expeditiously and as cheaply as had been done by the old combination. It is quite likely that the work did not cost a particle more in time or in labor under the new combination than under the old, with the result that the combination as such was not damaged by reason of the discharge of Anderson and Sword; and yet it does not require much imagination to conceive of a situation where Anderson and Sword each suffered substantial injury because of having been prevented from working. Anderson and Sword claim that the defendant compelled them to quit and hired the two new men to take their places. The defendant claims that the other four pilers compelled Anderson and Sword to quit and that they brought the two new men into the combination. If the position taken by the defendant is correct, then of course the defendant is not liable; but if the claim made by Anderson and Sword is true and Anderson has suffered any substantial damage peculiar to him as a single individual, then as such individual, he ought to have a remedy for that damage.

The doctrine that a right may belong to two or more individuals severally, but not to two or more jointly and severally, although it may belong to two or more jointly, must be conceded. If the defendant had absolutely refused to permit any lumber to be piled, or if it had permitted only a portion to be piled, then the conduct of the defendant would have

produced a breach of the contract thus conferring, it may be assumed, a joint and not a several right.   In the instant case, however, the defendant was willing that the lumber should be piled, but, according to the contention of the plaintiff, the defendant was not willing that the plaintiff should be one of the pilers. The plaintiff's right to work was, it is true, created by the written contract made with the defendant; and so in the very nature of things it became necessary for the plaintiff to plead the contract in order to show the existence of his right, just as it would have been necessary for him to have pleaded the contract in order to show the existence of his right if he had been suing a third person for interference with that right.   Now, if by the wrongful act of the defendant the plaintiff was prevented from exercising his right and suffered substantial damages peculiar to him alone and not suffered by the combination, he ought to have a remedy for it just as he certainly would have a remedy if a third person had by force prevented him from working.

Mr. Justice BEAN concurs in this dissent.