Argued April 14; affirmed April 21, 1942

## WALLS ET AL. *v.* GRIBBLE ET AL.

(124 P. (2d) 713)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND and ROSSMAN, Associate Justices.

*William H. Trindle*, of Salem, for appellants.

*Lincoln S. Ferris*, of Portland (Latourette & Latourette and Wm. J. Crawford, all of Portland, on the brief), for respondents.

RAND, J. This is a suit to compel the defendants to account to plaintiffs for one-half of the moneys received by the defendants from the sale of a bull which was purchased jointly by plaintiffs and defendants while engaged in a joint enterprise. The bull was purchased in February, 1936, for the sum of $250 from a dealer in New Jersey when the bull was about one year old. The plaintiffs and defendants each paid one-half of the purchase price and one-half of the express charges for shipping the animal to Oregon. The bull was a registered Jersey and is named and designated in the Jersey cattle registration records as Crag's Wonderful Aim. At the time the bull was purchased, the plaintiffs and defendants were separately engaged in the dairy business and their purpose in purchasing it was to build up and improve their respective herds and in the expectation of making a profit from the resale of the bull at a later period.

Their agreement was that neither party was to receive any compensation for caring for the bull, that no service fees should be charged by either thereof for the use of the animal, and that each party was to pay the expense of caring for and maintaining the bull while it was in the possession of the party having use for it, and this agreement was acted upon by both parties until the commission of the acts complained of.

It is undisputed that on or about May 11, 1938, A. W. Gribble received a letter from one George Campbell of Spring Hill, Tennessee, inquiring as to Gribble's ownership of the bull and asking the price at which it could be purchased. Gribble answered, stating that the price was $2,500, and thereafter numerous communications passed between them until Gribble finally agreed to accept $1,750 for the bull. On July 11, 1938, Campbell wired Gribble as follows: "WILL COME LOOK AT BULL 'AT 1750 WHERE WILL HE BE NEXT WEEK WOULD LIKE TO SEE YOUR WHOLE HERD ANSWER BY WESTERN UNION." At this time the bull was in the possession of the defendants, and the plaintiffs were in Hollywood, California. On the day that the telegram was received by Gribble, he wired to the plaintiff J. T. Walls, stating he was leaving on circuit Saturday and asking Walls if he would accept $250 cash for his interest in the bull and if not, to make a give or take offer, and, on the following day, Walls wired Gribble that he would accept $250 cash for his interest in the bull. On July 13, 1938, the Gribbles delivered a check in favor of the plaintiffs for the sum of $250 to the office of the plaintiff J. T. Walls in Portland, Oregon, writing on the check, "full int. in Crag's Wonderful Aim". On July 17 or 18, 1938, Campbell sent a representative to

Oregon, who, after inspecting the bull, purchased the same from Gribble and paid him therefor the sum of $1,700.

During all of this time, no information was given to the plaintiffs by Gribble of said negotiations and plaintiffs had no information in respect thereto until after the bull had been sold by Gribble and the purchase price paid. Because of defendants' failure to disclose to the plaintiffs any knowledge or notice of these transactions, the plaintiffs instituted this suit and, from a decree in their favor, the defendants have appealed.

It is clear from the foregoing that the purchase and maintenance of the bull by the plaintiffs and defendants for the purposes above stated constituted a joint adventure and that the agreement between them was not terminated until after the plaintiffs had been induced to transfer their interest in the bull to the defendants by the fraudulent concealment by the defendants of their negotiations and dealings with Campbell.

■■ A joint adventure has been defined as a "special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." Schouler, Pers. Prop., 5th ed., section 167a; 33 C.J. 841; *Elliott v. Murphy Timber Co.*, 117 Or. 387, 394, 244 P. 91, 48 A. L. R. 1043; *McKee v. Capitol Dairies, Inc.*, 164 Or. 1, 5, 99 P. (2d) 1013, and authorities there cited. A joint adventure differs from a copartnership principally in that, while a copartnership is usually formed for the transaction of a general business of a particular kind, a joint adventure is usually, but not necessarily,

limited to a single transaction, although the business of conducting it may continue for a number of years. 33 C.J. 842, and authorities above cited.

██ Since these parties were joint adventurers in the ownership and maintenance of the bull at the time of the transactions complained of, practically the same rules apply to them as would apply had their relations been that of a partnership. As a consequence of such joint adventure, in all their dealings with each other in respect to the common property, the parties were bound to exercise the highest degree of good faith. This the law exacts as a consequence of that relationship. The law also implies an agreement for an equal division of the price paid for their joint property when sold by one, whether done fraudulently or otherwise. When once an engagement of that nature has been entered into, the parties must act with the utmost good faith toward each other. Where one of such parties has been guilty of misconduct, it is the duty of the court at the suit of the injured party to enforce the contract in accordance with the well settled principles of equity jurisprudence. *Jackson v. Hooper*, 76 N.J.Eq. 185, 199, 74 Atl. 130.

"The relationship between joint adventurers, like that existing between partners, is fiduciary in character, and imposes upon all the participants the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise. This is especially true of those to whom the conduct of the transaction, or the property involved therein, is intrusted. Such a party will be regarded as a trustee and will not be permitted to enjoy any unfair advantage because of his possession or control of the joint property. The mere fact that he is intrusted with the rights of his coadventurers imposes on him

the duty of guarding their rights equally with his own, and he is required to account strictly to his coadventurers; and if he is recreant to this trust, any rights they may be denied are recoverable."

30 Am. Jur., section 34, p. 695.

■ It is clear from the testimony that the defendants, in failing to disclose to the plaintiffs their negotiations with Campbell at the time they obtained a transfer of plaintiffs' interest in the bull, were not acting in good faith but fraudulently.

For these reasons the decree of the circuit court is affirmed.