Argued January 16, reversed March 19, petition for rehearing
denied April 16, 1958

# WHEATLEY *v.* CARL HALVORSON, INC.

323 P. 2d 49

*Paul Gerhardt,* of Portland, argued the cause for appellant. With him on the brief were William B. Adams and Ferris F. Boothe, of Portland.

*Norman B. Kobin,* of Portland, argued the cause for respondent. With him on the brief was Melvyn C. Friendly, Portland.

Before PERRY, Chief Justice, and ROSSMAN, BRAND and McALLISTER, Justices.

BRAND, J.

This is an action at law in which the plaintiff sued three corporations and two individuals to recover $1,180 on an alleged contract of employment and on account of services allegedly rendered to defendants at their request. After trial verdict was returned and judgment entered against one defendant only, and that defendant, Carl M. Halvorson, Inc., a corporation, now appeals. The following facts are admitted by the pleadings: Defendant Carl M. Halvorson, Inc. is an Oregon corporation, which, during the period here involved, had its principal place of business at 218 Builders Exchange Building in Portland. Defendants H. Halvorson, Inc., and Halvorson Construction Company, Inc., are Washington corporations. Defendants Beda Halvorson and Mrs. E. B. Halvorson Hansen are Oregon residents and were and are co-partners transacting business as the Halvorson Construction Company. Against the three corporations and the two individuals, the plaintiff alleges:

"V.

"That at all times herein mentioned plaintiff was employed by defendants, and each of them, as a sal-

aried accountant and bookkeeper at defendants' place of business at 218 Builders Exchange Building, in the City of Portland, County of Multnomah, State of Oregon.

"VI.

"That on or before the 25th day of May, 1953, defendants, and each of them, became indebted to plaintiff in the sum of $1,180.00, for work, labor and services rendered to defendants at defendants' special instance and request at various times during the years 1951, 1952 and 1953 and said defendants impliedly promised and agreed to pay the reasonable value therefor. That the sum of $1,180.00 is the reasonable value of the work, labor and services rendered to defendants."

Demand for payment and refusal are alleged. The defendants filed a joint answer in which they denied the allegations of paragraphs "V" and "VI" of the complaint.

Defendants then, as a "first, further and separate answer and affirmative defense," alleged that:

"At all times herein mentioned plaintiff was employed by defendant Carl M. Halvorson, Inc., an Oregon corporation, as an office manager under an express contract of employment, including monthly compensation and expense allowance. In addition, certain bonuses were paid to plaintiff by said defendant. Pursuant to said express contract of employment, plaintiff performed accounting, bookkeeping, and general office management services for said defendants.

"Said position and employment of plaintiff as set forth in paragraph I above included as a usual, customary and regular incident thereof, the services, if any, performed by plaintiff as alleged in paragraphs V and VI of his complaint herein. Plaintiff performed said services, if any, and was paid in full for said services, if any, by said Carl M.

Halvorson, Inc. pursuant to plaintiff's said express contract of employment with said Carl M. Halvorson, Inc."

The reply was a denial of the allegations of the "affirmative" answer quoted supra.

Defendants' answer was not an affirmative defense or an affirmative plea in any proper sense of those words. It was merely a speaking denial. Defendants had denied employing the plaintiff and had denied that he did any work at their instance or request. The allegation in the answer that Carl M. Halvorson, Inc. had hired plaintiff and that the work done for defendants was pursuant to an express contract between plaintiff and Carl M. Halvorson, Inc., and that said defendant had fully paid plaintiff, was merely an amplification of the general denial which had already been pleaded by the defendants jointly.

Before considering the complex legal situation which is here involved, we will look to the positions taken by the respective parties, and the evidence.

The complaint may have been drawn on the theory that plaintiff is suing the defendants jointly and severally, for it alleges (1) that plaintiff was employed by "defendants and each of them" and (2) that "defendants and each of them" became indebted to plaintiff, though it also says (3) that the services rendered by plaintiff were rendered "at defendants' special instance" and (4) that "defendants impliedly promised to pay." The first two allegations adopt the joint and several terminology while the last two suggest a *joint* contract.

A contract was under consideration in *Gaines v. Vandecar,* 59 Or 187, 115 P 721, 115 P 1122. One clause

of the contract was that the defendants "promise to pay" which the court characterized as "clearly a joint promise." By the next clause the contract provided that "they and each of them agree" to pay, of which the court said, "thus clearly making it a joint and several promise." A third clause clearly contemplated several liability only. But the court in that case was dealing with terms in a bilateral contract, not with the allegations in a plaintiff's complaint, and the decision is of little help to us. A similar comment applies to *Anderson v. East Oregon Lumber Co.*, 106 Or 459, 211 P 937. A contract signed by plaintiff and five others read, "the parties * * * agree." It was held that the six men were joint contractors, but here also it was a contract, not a pleading, which was construed. Let us examine plaintiff's brief and ascertain how the plaintiff construes his own complaint: In his brief in this court plaintiff says, "Plaintiff, who was in the employment of Carl Halvorson, Inc., appellant, brought an action against all the defendants who were co-partners or joint adventurers." (Carl M. Halvorson, Inc., plaintiff's employer, was one of the joint adventurers.) Plaintiff states, "respondent was employed by the joint venture * * *." Again, plaintiff says, "Respondent brought this action on an implied contract against each of the defendants as co-partners."

Concerning plaintiff's original employment by Carl Halvorson, the plaintiff says, "The contract of employment consisted of an oral agreement that respondent would become employed by appellant [Carl M. Halvorson, Inc.] and receive a fixed compensation for a forty-hour week." Plaintiff asserts that such employment "contemplated work to be performed for appellant [Carl M. Halvorson, Inc.] solely" and that the services for which he is suing were performed for the partner-

ship or joint venture. Plaintiff emphatically states that:

> "This is not an action for overtime pay or for extra work, but is an action on an implied contract against the various defendants constituting a joint venture or partnership for the reasonable value of services performed for them."

Plaintiff in his brief further attempts to explain why the jury returned a verdict against one defendant only, by saying:

> "* * * It is * * * as reasonable to assume that the finding of the jury was to the effect that respondent had performed services for the partnership, but that its verdict against respondent alone was based upon a finding that the contract, introduced into evidence as Defendants' Exhibit 1, precluded the jury from returning its verdict against all the defendants."

Defendants' Exhibit 1 is the joint venture contract entered into by all the defendants, in which they pooled their facilities, services and assets for the performance of the obligations assumed in the contract for the construction of the Tecolote Tunnel. That contract specified generally the contributions to be made by each member of the joint venture. The contract contained no provision showing that the joint adventurers maintained a place of business at 218 Builders Exchange Building in Portland, as alleged in plaintiff's complaint, nor was there any provision that the place of business of the joint venture should be at that address. What the contract did provide was that:

> "The bookkeeping for audit shall be kept in the office of Carl M. Halvorson, Inc., Portland, Oregon, and said books shall be audited by a Certified Public Accountant at the end of each fiscal year."

The address mentioned in the complaint was that of Carl M. Halvorson, Inc. We fail to see how the provisions of that contract in any way precluded the jury from returning its verdict against all of the defendants if in point of fact and law the evidence showed any such liability on the part of all of the joint adventurers.

■■ To sum up plaintiff's position, it is clear that he contends that all of the joint adventurers were liable under the evidence, but that he is entitled to hold the one defendant against whom the jury returned its verdict. Before considering the applicable law we will summarize the evidence. Strictly speaking, the defendants were joint adventurers, for their association together was for one project only. *Walls v. Gribble,* 168 Or 542, 124 P2d 713. For convenience, however, we shall refer to them as the partnership for the principles applicable to a partnership govern the rights and duties of parties to a joint adventure. *McKee v. Capitol Dairies,* 164 Or 1, 99 P2d 1013; *Preston v. State Industrial Accident Commission,* 174 Or 553, 149 P2d 957.

Plaintiff had been previously employed by Halvorson Construction Company in 1943. In 1947 he wrote Carl M. Halvorson, seeking employment. Carl wrote offering employment. Shortly thereafter and in May 1947 Carl's business was incorporated under the name of Carl M. Halvorson, Inc., and plaintiff became an employee of that corporation. The original employment by Carl as an individual was for $75 a week for a 40-hour week, plus $15 weekly travel expense allowance. The business after incorporation increased each year. Plaintiff received a raise of $5.00 a week in June 1948 and another raise of $10 a week in October 1950, so that after October 1950 he was receiving from Carl

M. Halvorson, Inc. $90 a week plus $15 a week expenses. The three defendant corporations and the partnership known as Halvorson Construction Company entered into the partnership on 10 January 1950. From that time on the bookkeeping was "kept in the office of Carl M. Halvorson, Inc. as provided in the partnership contract."

Plaintiff knew of the preparation of the bid on the tunnel project and helped prepare it. A few days after the acceptance of the bid Carl called plaintiff by phone and asked him to prepare a consolidated balance sheet for the two corporations in whose names the bid had been made, namely, Carl M. Halvorson, Inc., and H. Halvorson, Inc. The balance sheet of H. Halvorson, Inc. was brought to Portland by that corporation and their office employees. The consolidated balance sheet was prepared and submitted to the Bureau of Reclamation and the award of the contract to the two bidders was approved. Throughout the entire testimony there is not a word of evidence indicating any express agreement that this work or any other work was to be paid for by H. Halvorson, Inc., or by the partnership, or that the partnership was hiring the plaintiff as its agent or employee. The facts are that the partnership started operating under the name of "Halvorson Contractors" and that plaintiff continued throughout the period in question to work as an employee of Carl M. Halvorson, Inc. on work of that individual corporation and that he also at the office of that corporation set up and kept a separate set of books to cover the business of the partnership. Plaintiff testified:

"* * * We designed and set up the accounting procedures and records to be carried at the project, itself, in California. My recommendations were approved and used for this project. I had to

qualify the joint venture for Social Security and Unemployment in the State of California, and all other various types of reports that are necessary to these various state and federal governments, including California state sales tax, and we also obtained information from the State of California regarding their income tax laws for corporations or partnerships. * * *"

Plaintiff deposited the money furnished by the various partners in the bank in Portland. Plaintiff undoubtedly worked more than 40 hours a week at times but he kept no record of such time. Sometimes he did the work relative to the partnership during regular office hours and did work which was strictly that of Carl M. Halvorson, Inc. on Saturdays and Sundays, etc. Plaintiff testified that he "would estimate" that for the year 1950 he spent a minimum of 400 hours "in work on this joint venture." He also estimated that in 1951 he spent approximately 500 hours on work "involving this joint venture" and in 1952 he estimated that he put in approximately 600 hours. In 1953 plaintiff resigned. He estimated the value of his work done for the partnership during 1953 at $168. He testified that in his opinion the total of such work was reasonably worth the amount for which he sued, i.e., $1,180.00. His position concerning work on the partnership account in 1950 is of interest. He testified that "around December 20th of 1950 I received a check of $500 from the joint venture of Halvorson Contractors, signed by Mr. E. Halvorson, Carl's father. He personally gave me this check, and when he gave it to me he asked me, 'Bill, are you happy?' And I said, 'I certainly am. Thank you very much.'" From plaintiff's brief we read, "The joint venture and partnership paid the re-

spondent $500 for services performed during 1950 and no demand is made for this year." On cross examination plaintiff admitted that the $500 check which he received on 20 December contained on its face "Merry Christmas and a Happy New Year." He was asked if that was not a Christmas bonus and he answered, "I believe it was a payment for my services for that year." Plaintiff testified that "there were withholdings taken from the check" but there is nothing to show whether the withholdings appeared on the books of Halvorson Contractors or on the books of Carl M. Halvorson, Inc. Also the plaintiff was the bookkeeper and there is no evidence that Halvorson Contractors knew of any such withholding. In fact there is no evidence of any entry on the books of the partnership showing any claim for wages due from the partnership to plaintiff or any employment of plaintiff by the partnership, unless we assume that the $500 Christmas check amounted to a recognition of the work done by plaintiff on the books of the partnership as a part of his employment by Carl M. Halvorson, Inc. Since the plaintiff admittedly kept the books of both the last-mentioned corporation and the partnership, the fact that he made no entry of wage claims against the partnership strongly indicates if it does not conclusively prove that plaintiff did not consider that he was impliedly hired by the partnership.

Defendants' Exhibit No. 2 is a summary of the payroll record of the plaintiff. We assume that it was from the books of Carl M. Halvorson, Inc., there being no evidence to the contrary. The summary was received without objection. It is as follows:

"William W. Wheatley Compensation, 1947-53

| "Year | Organization | Travel Expense | Wages | Bonus | Total |
|---|---|---|---|---|---|
| 1947 | Carl M. Halvorson, General Contractor | | $ 562.50 | | $ 562.50 |
| | Carl M. Halvorson, Inc. | $ 420.00 | 2,100.00 | | 2,520.00 |
| | | | | | $3,082.50 |
| 1948 | Carl M. Halvorson, Inc. | $ 780.00 | 4,082.00 | $ 400.00 | 5,262.00 |
| 1949 | Carl M. Halvorson, Inc. | 780.00 | 4,168.00 | | 4,948.00 |
| | Carl M. Halvorson, Gen'l Contractor | | | 550.00 | 550.00 |
| | | | | | $5,498.00 |
| 1950 | Carl M. Halvorson, Inc. | 780.00 | 4,280.00 | 1,500.00 | 6,560.00 |
| | Halvorson Contractors | | | 500.00 | 500.00 |
| | | | | | $7,060.00 |
| 1951 | Carl M. Halvorson, Inc. | 780.00 | 4,698.00 | 1,500.00 | 6,978.00 |
| 1952 | Carl M. Halvorson, Inc. | 780.00 | 4,662.00 | 1,000.00 | 6,442.00 |
| 1953 | Carl M. Halvorson, Inc. | 315.00 | 1,890.00 | | 2,205.00* |

* Does not include $315.00 in supplies charged to Wheatley for personal use and written off."

The defendants had no knowledge of plaintiff's claim against the partnership until a time in 1953 after he had quit the job. The record quoted supra shows in addition to the $500 Christmas gift, that Carl M. Halvorson, Inc. in 1950 gave plaintiff a bonus of $1,500, in 1951 a bonus of $1,500 and in 1952 a bonus of $1,000. Having received such additional pay from his admitted employer, he now seeks to recover from the partnership for work which may well have been the reason for the $4,000 in bonuses.

The plaintiff testified repeatedly that the work done on the books of the partnership was not "in accordance with" his regular duties for Carl M. Halvorson, Inc., and that he was not paid for the services which he rendered in connection with the joint venture, but in the light of the undisputed evidence of his admitted express employment by Carl M. Halvorson, Inc., we think such statements in both pleading and testimony were no more than conclusions of the pleader or witness. The facts justifying such conclusions are wanting. Plaintiff himself testified as follows:

"Q And when a job was bid, you knew there would be a certain amount of work connected with the setting up of the books and doing the bookkeeping and accounting work for them?

"A Yes, I know that.

"Q Now, would it be an accurate statement to say that that was part of your duties of your employment for Carl M. Halvorson, Inc.?

"THE WITNESS: I do not understand your question.

"(Last two questions and intervening answer read.)

"A Yes. Part of my work for Carl M. Halvorson, Inc., would be to take care of and set up any books that he may have for his corporation."

On cross examination the following occurred:

"Q * * * Were you ever advised that you would be paid as a separate matter by this joint venture for your services?

"A There was no discussion either way. * * *"

We quote further from plaintiff's testimony which discloses his own understanding of the partnership agreement:

"Q And in connection with pooling their resources, those organizations will each contribute—in other words, they agree as to what each organization is going to contribute to the final job. Isn't that a fact?

"A Generally, that is in the joint venture agreement, yes.

"Q And from your practical knowledge of what was done on this particular job, the contribution of Carl M. Halvorson, Inc., to this job, pursuant to this agreement, was to furnish the administrative services—that is, administrative and bookkeeping services,—was it not?

"A That is what the agreement called for."

The foregoing operates to impair his next answer:

"Q And, as a matter of fact, the Carl M. Halvorson, Inc., office did do that, did they not?

"A No. I did the work."

Another group of circumstances should be noticed. Plaintiff was familiar with the functioning of joint adventures in the construction industry and in connection with various of the defendants' previous activities. When plaintiff was employed by the old partnership before 1947 the evidence showed that most of the work done was in joint ventures between Halvorson Con-

struction Co. and H. Halvorson, Brother of Carl. Plaintiff testified:

"A  At that time the Halvorson family were operating as individuals, and they had some work that was joint venture of the individuals.

"Q  Well, they would pool their resources to bid on a particular job. Isn't that correct?
"A  Yes."

At that time plaintiff was bookkeeper. Plaintiff testified that: "The only additional office help that we required was during the year 1950, when we had another joint venture for the construction of the radar station at Condon, Oregon, and we — — —." At that point counsel for plaintiff interfered, as follows: "Well, your Honor, I think we had better skip that." There is no evidence that plaintiff claimed any compensation from the other joint adventure prior to 1947. Plaintiff was further interrogated as to the payment of the $1,500 bonus paid him in 1951 by Carl M. Halvorson, Inc. He testified that none of the bonus was for joint venture work. It did not include work on the Condon joint venture job nor on the Havre, Montana joint venture, nor, he said, was it for his efforts on behalf of the Equipment Corporation. Plaintiff testified that he had made a claim for 300 hours of work for the Halvorson Contracting Corporation in 1950, 1951 and 1952 and that he had also made a claim for additional compensation against Carl M. Halvorson, Inc. and H. Halvorson, Inc. for the Condon joint venture. He admitted that he had testified under oath in re the Condon joint venture; that he had worked 290 hours in the periods 1951 to 1952 and 1952-1953. The testimony which he admitted giving was given in a trial in the District Court. He was asked if he recovered a favor-

able judgment in that case, but objection to the question was sustained. Plaintiff testified as follows:

"* * * Actually, from the very beginning of this job, Carl M. Halvorson, Inc., was the major backbone of this particular joint venture, and he invested more money, and we, in turn, put in monies at various times that the other partners never put in, and where some of the other partners made withdrawals, Mr. Carl Halvorson, Inc., did not make any withdrawals, so that his investment in this joint venture at all times was the major, and actually it was the balancing wheel in keeping it going."

It is true that plaintiff also consulted with all of the partners and that they also gave plaintiff instructions, but such evidence is consistent with either the plaintiff's or the defendants' theory of the case.

■ Carl Halvorson as a witness was asked what was done under the joint venture agreement and what functions Carl M. Halvorson, Inc. performed thereunder. Counsel for defendants objected, which objection was overruled. The court said, "I don't think that this joint account, or agreement, is at all conclusive on this question." Counsel said, "I don't think so either." The witness testified, as follows:

"Our agreement between ourselves was essentially this: that the books would be kept in my office in Portland, and that a part of my responsibility, as Carl M. Halvorson, Inc., to this venture— in other words, one of the things that I lent to this venture was the services of my office organization to keep the books and to do the administrative clerical work that, of necessity, must be done on a venture of this kind. Now, there were other things that other members of this partnership did in lieu of what I did on this, and for that they received no compensation, and I, as Carl M. Halvorson, Inc., received no compensation whatsoever from

> the joint venture for these services that I provided in Carl M. Halvorson, Inc., and all the work that was done in my office, whether it was Mr. Wheatley or the stenographers or the other bookkeepers, or the other engineers—all that labor was paid for by Carl M. Halvorson, Inc., and no reimbursement was made from the joint venture to Carl M. Halvorson for that service."

There was no rebuttal testimony on this point by the plaintiff, who was the sole witness in plaintiff's case. The written joint venture contract was of necessity only an outline of the undertakings of the respective parties and we think the court properly permitted the witness to testify as to the functioning among themselves of the partnership. In view of plaintiff's intimate knowledge of the activities of the partnership, the relationship between the partners was relevant on the issue of the relationship between the plaintiff and the partnership. The testimony of Carl Halvorson did not contradict the provisions of the joint adventure contract; it supported them.

We turn to the law. A joint adventure participated in by all of the defendants was conclusively established. Under the authorities previously cited we must apply the law applicable to partnerships. 30 Am Jur 690, Joint Adventures, § 26. Whether we construe the plaintiff's complaint as alleging a joint or a several contract, we hold that the plaintiff by his testimony has committed himself to the proposition that his case is based on a claim for work done for the partnership and on an implied promise to pay by the partnership. He still adheres to that position in his brief in this court, notwithstanding the fact that the verdict was against only one of the partners who was his general employer. Plaintiff's theory of the case is clearly

set forth in his request for an instruction, which reads as follows:

> "The court instructs the jury that the pleadings disclose that this is not an action against Carl M. Halvorson, or Carl M. Halvorson, Inc., on an express contract of employment, but an action against defendants, a joint venture, a separate legal entity, for quantum meruit on an implied contract."

The courts are not in agreement as to whether a partnership is an entity. 68 CJS 496, Partnership, § 67. See, *Re Pittock's Estate,* 102 Or 47, 201 P 428, holding a partnership is a separate and distinct entity; and, *Claude v. Claude,* 191 Or 308, 330, 228 P2d 776, 230 P2d 211. Differences, of course, exist between partnerships and corporations, but in one respect partnership or joint adventure must be treated as an entity. The liability of partners for firm debts based on contract is joint and not several or joint and several. *Anderson v. Stayton State Bank,* 82 Or 357, 159 P 1033; *Ryckman v. Manerud,* 68 Or 350, 136 P 826; *North Pacific Lumber Co. v. Spore,* 44 Or 462, 75 P 890; *Mirabile v. Smith,* 119 Cal App2d 685, 260 P2d 179; *Southard et al v. Oil Equipment Corporation,* Okl (1956), 296 P2d 780; *Brown & Bigelow v. Roy,* Ohio App (1955), 132 NE2d 755; *Salem v. Seigel,* 126 NYS2d 214 (decided under New York Partnership Law, § 26, Subd 2); *Bloom v. Kapps,* 73 NYS2d 325; *Patrikes v. J.C.H. Service Stations,* 41 NYS2d 158; *Gomez v. Vazquez,* 32 NYS2d 34 (decided under Uniform Partnership Law). See, ORS 68.270(2).

■■ Plaintiff, having insisted throughout the trial and before this court that his claim is "against the defendants, a joint venture, a separate legal entity", and the law being that liability of partners or joint adventurers on contract is joint and neither several nor joint

and several, it follows that when all of the partners or joint adventurers have, as here, been joined as defendants, the judgment must be for or against all of them. The verdict in this case was in favor of all but one of the defendants and against only one, Carl M. Halvorson, Inc. We are of the opinion that the verdict must be taken as a finding that there was no joint contract and that the joint adventurers were not liable on any such contract.

■ In *Southard v. Oil Equipment Corporation,* supra, the plaintiff Oil Equipment Corporation brought an action against 17 defendants, seeking, in addition to other relief, judgment for the rental value of some oil well casing. Plaintiff had judgment below. Defendant Roy Pooler who was served with summons and ten defendants who were served only by publication, appealed. It was held that the court was without jurisdiction to render a personal judgment against the defendants who were served by publications. The issue with which we are concerned related to the appeal of Pooler. It was alleged that the defendants Mills, Southard, Pooler, and the nonresident defendants entered into a mining partnership and as such became liable for development costs. The trial court found that the defendants were partners. The court said:

> "* * * Even if a cause of action against the partnership had been pleaded and proven, it was error to render a personal judgment against Pooler by reason thereof. Bearman v. Bracken, supra [112 Okl 237, 240 P 713]."

The uniform Partnership Act was adopted in Oregon by the Laws of 1939, Chapter 550. The pertinent portion of the act reads as follows:

> "All partners are liable:
> "(1) Jointly and severally for everything

chargeable to the partnership under ORS 68.250 and 68.260.

"(2) Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract." ORS 68.270.

The sections mentioned in ORS 68.270 read as follows:

"Where, by any wrongful act or ommission [sic] of any partner acting in the ordinary course of the business of the partnership, or with the authority of his co-partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act." ORS 68.250.

"The partnership is bound to make good the loss:

"(1) Where one partner acting within the scope of his apparent authority received money or property of a third person and misapplies it; and

"(2) Where the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in custody of the partnership." ORS 68.260.

A partnership contract for the payment of money for services is not within the provisions of ORS 68.250 and 68.260 and therefore such contract creates only a joint liability.

■ In the case of *Balley v. Davis*, 75 Idaho 73, 267 P2d 631, plaintiffs sued defendants J. E. Davis, E. C. Davis and L. A. Davis, as a co-partnership on a contract. Ultimately all of the partners were served. Plaintiffs moved to dismiss as to two of the defendants, and an order dismissing them with prejudice was entered. Defendant E. C. Davis, one of the partners, was in default and the court entered judgment against him alone.

Thereafter defendant E. C. Davis moved to vacate the default. The motion was denied by the trial court and E. C. Davis appealed. The court cited the Idaho Statute, I. C., § 53-315, which is identical to ORS 68.270, and held that Sections 53-313 and 53-314, I. C., which are identical to ORS 68.250 and 68.260, "refer to a wrongful act or omission by a partner or a breach of trust and are not material in this action." The court then said:

"There is no contention in this cause that the alleged liability did not arise out of a partnership contract or that any of the appellants entered into a separate obligation to perform the partnership contract.

"The partnership obligation of appellants being a joint obligation and not a joint and several obligation, the suit must run against all the partners and the judgment must be against all the partners jointly or against none of them save and except where one partner has a defense personal to himself. Section R10-703, I.C.; 68 C.J.S., Partnership, § 235 b., page 728; 40 Am. Jur., Partnership, Section 446, pages 441-2."

It was held that the dismissal with prejudice against J. E. Davis and L. A. Davis barred any judgment against them individually or jointly, prevented a joint judgment against all the partners on the partnership liability and operated as a dismissal also as to appellant, E. C. Davis. The court relied upon the following from Corpus Juris Secundum:

"Although there is authority to the contrary, usually based on statutes, the general rule is that in an action on a joint contract or obligation, a dismissal, discontinuance, or nonsuit as to one or more defendants served with process operates as a dismissal, discontinuance, or nonsuit as to all. This rule does not apply to prevent a discontinuance as

to a defendant who is not in fact one of the joint obligors or who is a nonresident of the state so that he cannot be served, or who makes a defense personal to himself. Thus plaintiff may discontinue as to a defendant who pleads infancy, or discharge in bankruptcy, and proceed against the other defendants." 27 CJS, Dismissal and Nonsuit, § 31.

"Where the obligations of partners are joint, the general rule that, in an action on a joint obligation, a dismissal, discontinuance, or nonsuit as to one or more defendants served with process operates as a dismissal, discontinuance, or nonsuit as to all, applies.  *  *  *" 68 CJS, Partnership, § 214.

And see Annotations, 44 ALR2d 580.

In *Thomas v. Barnes*, 34 Or 416, 420, 56 P 73, this court said:

"It will be observed from the statement of the issues that this is an action upon a joint undertaking executed by the three defendants, and, therefore, that a recovery must be had against all or none, unless one or more of them has set up and maintained a defense personal to himself; and such does not seem to have been the case in this instance.  *  *  *"

The rule set forth supra is determinative of the pending case. The entry of judgment against one partner on a joint partnership obligation was an error apparent on the face of the record and was highly prejudicial to the defendant.

■ It may be argued that this is not a case of "dismissal, discontinuance or nonsuit" and that the rule cited does not apply. But if a dismissal or nonsuit as to one or more of the partners operates as a discharge from liability of all, it would seem clear that a verdict favoring one or more of the partners must have the same result. The "all or none" rule would be applicable a fortiori in this case. For these reasons

without more the judgment against the sole appealing defendant must be reversed.

■■■ The defendant has suggested other compelling reasons requiring a reversal of the judgment. We deem it unnecessary to discuss them at length. It must be conceded that one partner may enter into a separate contract to pay a debt of the partnership, but there is here no evidence of such a contract. The parties and the court failed to distinguish between (1) a situation in which there is a joint debt of a partnership coupled with a separate promise of one partner to pay that joint debt, and (2) a situation in which there never was a joint debt and one partner agreed to furnish the services of one of his employees as a part of his performance of the joint undertaking. The court erroneously instructed the jury as a fact that the plaintiff did certain work *for the partnership or joint venture,* which instruction begs the entire question in this case. It then instructed the jury that they might under certain circumstances return a verdict against the single defendant Carl M. Halvorson, Inc. But plaintiff's theory was not that Carl M. Halvorson, Inc. made a contract with its partners for the benefit of the plaintiff. On the contrary the pleading alleged an implied contract between the partnership and the plaintiff, which was not proven. There was no evidence of any express contract with anyone to the effect that the partnership was to become obligated to pay the plaintiff, and we find no substantial evidence that the partnership should reasonably have understood that plaintiff was their employee.

■■ If we were to disregard plaintiff's repeated insistence that he was suing the partnership, and treat the case as an action for extra services performed for Carl M. Halvorson, Inc., plaintiff would still be con-

fronted by the decisions which hold that there is a presumption of law that all services rendered by an employee, during the period for which he was employed, of a nature similar to those required of him in the course of his regular duties, are paid for by his salary, and to overcome this presumption he must show an express agreement for extra services. *Robinette v. Hubbard Coal Mining Co.*, 88 W Va 514, 107 SE 285; and see, extensive note, 25 ALR 218, and 107 ALR 705; 35 Am Jur 498, Master and Servant, § 66; 12 Am Jur 505, Contracts, § 7; *Howland v. Iron Fireman Mfg. Co.*, 188 Or 230, 287, 213 P2d 177, 215 P2d 380; *Keith v. Kottas*, 119 Mont 98, 172 P2d 306; *Robinson v. Munn*, 238 NY 40, 143 NE 784; *Williams v. Goodyear Aircraft Corp.*, 84 Ohio App 113, 85 NE2d 601; *City of Wichita Falls v. Long*, Tex Civ App (1942), 167 SW2d 792; *Jorgenson v. Midland Nat. Life Ins. Co.*, 71 SD 43, 21 NW2d 54.

In this case the plaintiff was employed by Carl M. Halvorson, Inc. as a salaried accountant and bookkeeper. Some of his work involved the keeping of accounts in which his employer alone was involved in transactions with other parties. Some of it involved the keeping of books in which his regular employer was vitally interested but in which others associated with his regular employer as joint adventurers were also interested concerning transactions with other parties. The work so performed was not of a clearly dissimilar nature to that for which he was expressly employed. Plaintiffs right to claim extra compensation from Carl M. Halvorson as his sole employer or from the partnership is, under the facts of this case, foreclosed by the contemporaneous construction which both parties and particularly the plaintiff placed upon the transaction. If plaintiff intended to claim compen-

sation from the partnership or from his regular employer, he made no entry upon the books to indicate even his unilateral expectation of such compensation, and, as we have said, he gave no hint of any such claim or expectation to the partnership or to Carl M. Halvorson, Inc. If plaintiff's claim is not a pure afterthought invented subsequent to the termination of his services, it at most is supported only by an uncommunicated belief on his part. The evidence is as consistent with the idea that he was performing service for his regular employer without right to extra pay as it is that he was a claimant upon an implied contract with the partnership.

In *Kontz v. B. P. John Furniture Corp.,* 167 Or 187, 115 P2d 319, this court said at 167 Or 203:

"The practical interpretation of the terms of a contract made by the parties while performing it is universally deemed a safe guide to the intended meaning of the instrument. * * *"

In *Kitchens v. Lee,* 221 SC 59, 69 SE2d 67, the court said:

"A second cogent reason for reversal of the judgment is that respondent is contending for an enforcement of the contract in terms which are in conflict with the contemporary interpretations which were placed upon it by both contracting parties. In cases of doubt, that is determinative. 12 Am. Jur. 787 et seq., Contracts, sec. 249. Stackhouse v. Pure Oil Co., 176 S.C. 318, 180 S.E. 188. * * *"

See also, 17 CJS 755, Contracts, § 325.

Under the circumstances of this case we hold that in the absence of any express agreement therefor, plaintiff was not entitled to extra compensation.

The judgment for plaintiff is reversed.