Edward J. MORAN and Thomas J. O'Loughlin, doing business as Moran Lumber Co., a copartnership, Appellants,

v.

H. W. S. LUMBER CO., INC., Appellee.

No. 74–3363.

United States Court of Appeals, Ninth Circuit.

June 15, 1976.

Loyd W. Weisensee (argued), Portland, Or., for appellants.

Thomas S. Moore (argued), Portland, Or., for appellee.

* The Honorable Leonard P. Moore, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

## OPINION

Before MOORE,* KILKENNY and SNEED, Circuit Judges.

KILKENNY, Circuit Judge.

Appellants, defendants below, appeal from a judgment entered against them as an outgrowth of a jury trial in the district court. We affirm.

## BACKGROUND

Appellee is an Oregon corporation, which was formerly known as Morgan-Staley Lumber Company. Its name was changed to H.W.S. Lumber Company, Inc., on October 17, 1972. Appellants are residents of the state of Pennsylvania. During the years in question, appellee was in the business of selling at wholesale, lumber and lumber products, and, under an agreement with appellants, arranged sales of lumber in Pennsylvania and surrounding states.

During the years under scrutiny, the appellee arranged shipments of lumber on appellants directions and invoiced the customers direct. The customers paid appellee. If there was a profit on the transaction, as determined by appellee, one-half of that profit would be credited to appellants' commission account, maintained by appellee. If there was a charge against the sale, as determined by appellee, one-half of that charge was debited to appellants' commission account.

Between the dates of December, 1965, and April 25, 1966, under the agreement between the parties, the appellee made substantial shipments of lumber to Madway Main Line Homes, Inc. [Madway] of Wayne, Pennsylvania. Madway failed to pay for the lumber. In June, 1966, Madway was adjudicated a bankrupt in proceedings initiated in the United States District Court for the Eastern District of Pennsylvania.

On January 23, 1967, appellee filed a proof of claim for the full net price of its

lumber sales to Madway in the amount of $49,758.99, plus "service charges" of $487.65, a total of $50,246.64. On May 21, 1968, appellee received $9,701.80 as its distributive share of the liquidated assets of Madway. This sum represented 20% of the indebtedness, less $250.00 attorney fees. No part of the Madway loss has been paid by appellants.

On or about January 10, 1966, appellee loaned appellants $5,000.00 and executed a note for that amount on the same day. Between February 28, 1966, and July 31, 1967, a total of $3,801.19 was credited on this note. This credit was made up of twelve items debited to appellants' commission account on commissions earned during that period.

The last sale made by appellants for appellee under their arrangement was on January 26, 1968, the lumber sold pursuant to this sale being on an invoice dated April 16th of that year. On May 10, 1968, appellee paid appellants the sum of $187.65. This was the last payment made on the account by appellee and represented the balance of commissions due on the April 16th invoice.

Appellee's original complaint sought the recovery under a contract made in March, 1964. Later, appellee alleged that the original contract actually was formed in 1960.

### THE PRE–TRIAL ORDER

In the pre-trial order, appellee contended that appellants sold lumber and mill work to customers in Pennsylvania, New Jersey, Maryland, and Delaware and followed through on these sales by ordering the material from appellee in accordance with a joint venture agreement between the parties reached in the early part of 1960, under which (a) there would be an equal division between appellants and appellee of the uncollectible interest or carrying charges on past due accounts for lumber sold to appellants' customers at a fixed interest rate, (b) discounts to appellants' customers would be divided equally between appellee and appellants, (c) there would be an even division between appellants and appellee of all prof-

its or losses, including credit losses resulting from uncollectible accounts receivable from sales to appellants' customers, (d) it was appellants' responsibility to set credit limits where necessary. Also that the agreement was in full force and effect during the years 1965 and 1966 when appellants arranged for the Madway transaction and that as a result of the transactions between the parties, appellants were indebted to appellee for $27,410.60, plus $1,198.81, the balance due on the note dated January 10, 1966.

Appellants principal contentions in the pre-trial order are: (1) that the claims are barred by the statute of limitations or by laches, (2) that the alleged agreement was void because it was not in writing, (3) that if the claims were not barred by the statute of limitations or void because not in writing, appellants were only obligated to repay appellee out of appellants' commissions, and (4) that the note of January 10th has been paid in full. The only contentions on appeal are as hereinafter stated.

Although numerous issues of fact are recited in the pre-trial order, the court and counsel in conferences prior to the trial limited the factual issues to: (1) did appellee and appellants enter into a joint venture whereby appellants agreed to a fifty-fifty split of profits and losses, including credit losses on sales to appellants' customers, and (2) if appellants agreed to be responsible to appellee for 50 percent of the uncollectible accounts, was appellee limited to recovery out of future commissions earned by appellants on sales for appellee, and (3) were appellee's claims barred by the statute of limitations?

### THE TRIAL

Throughout the proceedings immediately before and during the course of the trial, down to and including the time of submission to the jury, the appellants were firm in their position that the original agreement between the parties did not reach the status of a joint venture and that even if a joint venture existed, the Madway transaction

was separate and independent of any and all other transactions. On this theory, appellants argued that the Oregon six year statute of limitations controlling actions on contracts, ORS 12.080(1), and the Pennsylvania statute, 12 P.S.Pa. § 31, barred appellee's claims. In the proceedings before the trial court and on argument to this court, counsel for appellants practically conceded that if the overall arrangement between the parties constituted a joint venture, appellants' claims would be barred by neither statute.

As an outgrowth of the discussions, before and during the trial, the lower court instructed in detail on the elements of a joint venture and, with the assistance and advice of counsel, decided to submit two interrogatories to the jury with at least the implied understanding that the judge would then decide the issue on the statute of limitations. On trial, the appellants did not question the amount of the Madway loss or the balance due on the note. The agreed upon interrogatories submitted to the jury read:

1. Was Moran's [appellants'] portion of the loss payable without regard to the sufficiency of the commissions?

    ———————     ———————
    YES             NO

2. Was the arrangement between Morgan-Staley [appellee] and Moran [appellants] a joint venture?

    ———————     ———————
    YES             NO

The jury answered both interrogatories in the affirmative.

It is significant that appellants neither objected to nor saved an exception to the court's instructions on joint venture, nor did counsel request a special interrogatory on whether the Madway loss was separate and independent of the joint venture arrangement or a separate joint venture in itself. It is manifest that appellants' counsel was of the belief that his separate and independent theory was necessarily included in interrogatory number 2. Our reading of the record and our understanding of appellants' argument on appeal convince us that the

issue was included in the framework of that interrogatory and that the jury so understood. Our conclusion is fortified by the fact that the jury answered interrogatory number 1 in the affirmative. This follows for the reason that there is no evidence whatsoever to indicate that the issue referred to in that interrogatory was mentioned or discussed at the time of the Madway transaction. To find affirmatively on that issue, the jury necessarily found that a continuing joint venture arrangement existed between the parties, a provision of which required appellants to pay their portion of the losses including the Madway loss ". . . without regard to the sufficiency of the commissions."

Because the jury also answered interrogatory number 2 in the affirmative, the appellants are faced with overall findings that a continuing joint venture agreement existed between appellants and appellee and that their arrangement included an agreement on the part of appellants to pay their portion of the loss under scrutiny.

### ISSUES ON APPEAL

I. Were appellee's claims barred by Oregon's six year statute of limitations? Although the question of laches is presented in the pre-trial order, it is not urged as an issue on appeal.

II. Was evidence of normal routine business practice admissible?

### I.

Appellants' counsel make "much ado about nothing" in attempting to determine whether the action is one on account, in debt, or for an accounting. Neither the complaint, nor the pre-trial order, attempts to formalize the nature of the claim, nor shall we. Under Rule 2, F.R.Civ.P., there is only one form of action in the district court and that's known as a "Civil Action." The provisions of Rule 8, F.R.Civ.P., only require a pleading contain (1) a short and plain statement of the court's jurisdiction, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the

relief to which he deems himself entitled. The only subjects which require special pleading are those mentioned under Rule 9, F.R.Civ.P., none of which apply to the facts in this case. If appellants desired a more definite statement of the claims, they could have pursued the procedure provided by Rule 12(e), F.R.Civ.P.

In any event, the contentions of the parties and issues of fact were fully delineated in the pre-trial order. That order superseded the pleadings. The parties agree that, by whatever name, the transactions between them continued into the year 1968 and that the last lumber sold under the agreement was on an invoice dated April 16, 1968. Consequently, the ultimate issue is whether appellee is entitled to relief on the overall claims set forth in the pre-trial order. In these circumstances, we have no occasion to decide what technical common law or equitable name might properly be applied on appellee's claims.

Our basic question is when does the statute of limitations commence to run on the claim of one joint venturer against the other on a record such as we have before us.

■ We accept appellant's statement that the law of the state of Oregon and of the state of Pennsylvania on the subjects under consideration is essentially the same. Accordingly, we look to the law of the state of Oregon. Under Oregon law, the issue of whether the relationship between the parties was a joint venture is a question of fact which is properly submitted to a jury. *Long v. State Industrial Accident Commission*, 246 Or. 187, 424 P.2d 236 (1967); *Preston v. State Industrial Accident Commission*, 174 Or. 553, 149 P.2d 957 (1944). The rules applicable in determining the existence of a partnership form the criteria to be used in determining whether a joint venture existed. *Preston · v. State Industrial Accident Commission, supra; Wheatley v. Halvorson, Inc.*, 213 Or. 228, 323 P.2d 49 (1958), and *Hayes v. Killinger*, 235 Or. 465, 471, 385 P.2d 747 (1963). If a joint venture is found, the rights of co-adventurers in matters between themselves are governed by the principles applicable to partnership.

*McIver v. Norman*, 187 Or. 516, 205 P.2d 137 (1949). There is a presumption that once it is shown that particular persons have formed a partnership, they continue their relationship in that association until dissolution is proven. *Long v. State Industrial Accident Commission, supra; Burke Machinery Co. v. Copenhagen*, 138 Or. 314, 6 P.2d 886 (1932). By analogy the same rule applies to joint ventures.

■ Since it is presumed that a partnership continues until proof of a dissolution, *Burke, supra*, we must, under the above authorities, apply the same rule to the joint venture agreement before us. Again, we mention that the parties continued under their arrangement until after the first of the year, 1968. The dissolution under Oregon law is defined as the change in relation of the partners caused by any partner ceasing to be associated in the carrying out as distinguished from the winding up of the business. Even on dissolution, the partnership is not terminated, but continues until the winding up of the partnership affairs. ORS 68.510 and ORS 68.520. Consequently, the appellee's claims against the appellants on the Madway loss did not accrue until after the final transaction between the adventurers in 1968. The complaint was filed on April 19, 1973, well within the six year statute of limitations.

■ Appellants' argument that theirs was an isolated joint venture relating to the Madway sales which ended on June 1, 1966, when Madway was declared a bankrupt is meritless. The record clearly shows that the parties continued with their arrangement until well into 1968. The fact that a loss might have been anticipated by reason of the bankruptcy is beside the point. No one knew at the time the amount of the loss. By its answers to the interrogatories, the jury necessarily found that the joint venture agreement between the parties was one of a continuing nature and covered the Madway loss.

We have considered the principal authorities cited by appellants, including *McDonald v. Holmes*, 22 Or. 212, 29 P. 735 (1892), and

find them of little, if any, value in the solution of the problem before us. *McDonald* supports our conclusions, rather than those of appellants. That case recognized the general rule that a joint debtor *may*, as soon as he has paid more than his share of any single joint debt, enforce contribution from his fellow debtor as to that debt. We do not dispute that rule. However, as demonstrated by the above authorities, a joint venture is likened to a partnership [McDonald] in which no cause of suit or action arises in favor of one against the other until the partnership business is settled. The statute of limitations does not begin to run until that time.

In light of the above conclusions, we do not reach the question of whether the payment on May 21, 1968, to the appellee by the trustee in bankruptcy, extended the life of the obligation.

## II.

 The appellants argue that the admission in evidence of similar transactions with non-parties constituted reversible error. We have studied the record and, in particular, that portion emphasized in appellants' brief. While some of the questions are vague and some of the answers unresponsive, there is direct evidence that the parties agreed to split all profits and losses, including credit losses, equally with no restrictions. Likewise, there is substantial direct evidence that payment of appellants' share of the losses would not be limited to payments out of commissions only. This evidence is entirely separate and apart from the testimony received on the appellee's normal practice and procedures in other joint ventures. The volume of this testimony on business routine was minimal. Even if error, the improper admission of incompetent evidence which is merely cumulative on matters clearly shown by admissible evidence is harmless error. *Wineberg v. Park*, 321 F.2d 214 (CA9 1963). Furthermore, the admission or exclusion of evidence on grounds of relevancy is in the federal courts a matter for the trial court's judgment, and is not a ground for a reversal unless such

action is inconsistent with substantial justice. *Duff v. Page*, 249 F.2d 137 (CA9 1957). Accordingly, we hold that the error, if any, is harmless under Rule 61, F.R. Civ.P., and the provisions of 28 U.S.C. § 2111.

It is unnecessary to decide whether in fact the evidence received was admissible under the provisions of Rule 406, Federal Rules of Evidence, dealing with habit and routine practice.

### CONCLUSION

Finding no error, we affirm the judgment of the lower court.