JORGENSON, Appellant, v. MIDLAND NATIONAL LIFE INSURANCE COMPANY, Respondent

(21 N. W.2d 54.)

(File No. 8789.   Opinion filed December 17, 1945.)

**C. R. Jorgenson,** pro se, of Watertown, for Appellant.
**Allan L. Austin,** of Watertown, for Respondent.

WALL, Circuit Judge. The plaintiff has appealed from a judgment which denied him the right to recover, after the Court had directed the jury to enter a verdict against him. He alleged in his amended complaint that he was a duly licensed attorney; that about July 1, 1939, plaintiff and defendant had negotiations in reference to the performance of legal services by plaintiff for defendant, and at such time the defendant represented to plaintiff that the legal services it wanted plaintiff to perform would require not more than one-half of plaintiff's reasonable working time, and defendant agreed to pay plaintiff therefor the sum of $125 per month, and to furnish plaintiff free office rent and the services of a stenographer, and that no agreement or understanding was had regarding other legal work that might be submitted by the defendant requiring more than one-half of plaintiff's reasonable working time; that between the date first named and March 7, 1942, defendant submitted additional work to plaintiff which required services largely in excess of one-half of his reasonable working time; that no part of such additional services has been paid for, and there is due the plaintiff for same the sum of $6,218.

The defendant by answer admits employing plaintiff to perform legal services, at about the date named, and alleges that plaintiff agreed to perform all legal services required to be performed by defendant, and that plaintiff was to receive as full compensation therefor the sum of $125 per month, and was not to be required to pay any office rent in defendant's office building, and was to have the services of a stenographer furnished by defendant, and that plaintiff was to remain free to handle his private law practice for other clients, and defendant admits that some discussions were had with plaintiff as to the amount of time required for performing defendant's legal work, but defendant denies there was any agreement whatever that plaintiff was to be paid for any work that ran beyond one-half of the working time of plaintiff, and alleges that said employment was on a month to month basis; and that plaintiff's salary was

raised to $150 per month about September 1, 1941, and his employment ended March 7, 1942; defendant alleges plaintiff was paid in full and that it owes plaintiff nothing.

The evidence shows that defendant has long been engaged in writing life insurance and in investing its funds in mortgages; that it had from time to time employed counsel for consultation, the examination of abstracts, and the defense or prosecution of lawsuits. Plaintiff first handled legal matters for defendant about 1936, and for a time claimed a fee for each transaction. Early in 1939 some difference of opinion seems to have arisen between the parties, the plaintiff claiming that defendant owed him more for legal work than he owed defendant for office rent in defendant's building, and defendant notified plaintiff by letter to discontinue all services. Shortly after that, in July, 1939, the parties entered into the agreement which has resulted in this suit, and this agreement settled their past claims against each other, with an understanding that the $125 which plaintiff was to be paid monthly would start as of the first of April in that year. No written agreement was signed, and the issue is whether the monthly payments which it is conceded were made constituted full payment for all services rendered. The services which plaintiff performed during the time in question were of the same general nature, and were similar to services theretofore performed by plaintiff for defendant in connection with its ordinary business transactions, but took more time, plaintiff contends, than the parties agreed plaintiff should devote to them for the pay received.

Defendant's president, Mr. Bell, testified that defendant employed plaintiff about July 19, 1939, to do defendant's legal work for $125 per month, with office space and stenographer furnished by defendant, and that plaintiff was to do all of defendant's legal work, and that there was no definite time of employment fixed.

Plaintiff on his own behalf testified that on July 18, 1939, he made an agreement with the defendant whereby he was to work for $125 per month, together with office rent, and should put in not to exceed half time, and this arrangement was to begin as of March 1, 1939. Plaintiff

stated he said, "I will work until January 1940," and defendant's officer said, "We will try it to January first"; that he went to work immediately under this agreement and continued doing defendant's legal work until March 7, 1942; that no other or different arrangement was made with defendant on or after January 1, 1940, except that he told defendant's president and secretary about that date that he couldn't handle the business on half time, and they informed him that they would take it up with the Board of Directors at their next meeting; and that several times thereafter he told Mr. Bramble, defendant's secretary, he was putting in more than half time, and that he would have to have more pay, and he told Mr. Bell he wanted more salary, and was told that the matter would be taken up with the board. Plaintiff was asked if his compensation was increased from $125 per month to $150 per month about September 1, 1941, and he answered, "It apparently was." Plaintiff carried on his own private practice at all times.

On March 5, 1942, after the parties had had some differences of opinion, plaintiff wrote a letter to Mr. Bramble in which he stated: "I had found during the past year that it was impossible for me to do the work of the company that came into my office, on half time. * * *I do not claim that you made me any specific and definite promise that I was to receive a raise in salary, but I certainly understood from our conversation, that such was the case. When I received my last check I noticed that nothing had been done with reference to my salary, I wrote you the letter, as I thought we should have some definite understanding."

About the time their agreement was entered into, plaintiff made an entry in his office journal as follows: "7-18-39 agreement with Midland to work for $125.00 per mo. together with office rent, same to begin March 1, 1939, and end Jan. 1, 1940." The journal then shows that defendant was paid $375 for his compensation from the time it was agreed it would start up until June 30, 1939. And an entry made shortly thereafter head: "8-1-39, Midland National Life credit by July salary, $125.00." Plaintiff was asked with reference to his books and the salary payment just

noted: "Thereafter did you make any other charge against the Midland except for salary or expenses reimbursed?"; and he answered, "I don't think so." And he also gave the following testimony:

"Q. Did you ever keep a record of the time spent by you on work of the Midland National Life Insurance Company? A. Not on the book.

"Q. Where did you keep it, in your head? A. In my head, I could tell whether I worked from nine to six or from nine to 12 at night without putting it on the book.

"Q. And did you ever present, prior to March 7, 1942, any bill for legal services to the Midland National Life Insurance Company, that is, between July 19, 1939, and March 7, 1942? A. No, I did not."

He also stated that from time to time he sent the defendant statements for expenses on trips which he made on its behalf and was reimbursed for such expenses, and that he did not advise defendant that he was going to make the present claim against it until March, 1942.

To make out his claim, he offered evidence of all the services he had performed for defendant since the time of the contract, what the reasonable value of the services was, deducted the monthly payments he had received from defendant, and urged that he should recover the balance. He was asked: "Now that work was done both during what you claim to be the half time which you claim you should have spent for the company and additional portions of the day in addition to the half time?" And he answered, "That's correct." He was also asked with reference to his services: "What part of it did you do in the half time?" And he answered, "That nobody could tell."

"Q. You don't know what you did in half time? A. No, you only know what hours you put in, you don't know what you did in that particular time.

"Q. You don't know what work you did in the half time? A. No, I couldn't tell you what particular item."

■ Defendant introduced and plaintiff admitted receiving and cashing a number of checks showing that plaintiff received $125 per month from July 31, 1939, until Sep-

tember 1, 1941, and that he received $150 per month from September 1, 1941, until March 1, 1942, and a smaller check to cover the time up to March 7th. Each of these checks has printed thereon: "This check is issued in full payment of account shown hereon and payee accepts it as such by endorsement hereof. Salary." Defendant suggests the applicability of SDC 17.0504: "Where after the expiration of an agreement respecting the wages and the term of service the parties continue the relation of master and servant, they are presumed to have renewed the agreement for the same wages and term of service." If an employee continues working after his term expires, and no new contract is made, it will be presumed the parties intended that he should be paid the same wages he received under the original contract. 39 C. J. 186.

■ Plaintiff urges that if the law with reference to master and servant is to be applied, he finds support for his contention he is entitled to pay for extra work in 26 Cyc. 1037, but the sentence on which he relies deals with a situation where the servant performs services outside the scope of his employment; and we find the following on page 1036: "Unless there is an express agreement to pay therefor, or a uniform and notorious custom sufficient to warrant the presumption that a contract was made with reference thereto, a servant cannot ordinarily recover additional compensation for extra work within the scope of his employment." This rule appears to be of general application and is held to apply to overtime, work on Sundays or holidays, or during the vacation period; and if the work, while not strictly within the scope of the employment, may still be considered as reasonably incidental to it, an intention on the part of the employer to pay extra compensation for it is not generally to be inferred from his knowledge that the employee was doing the work, or even from the fact that he requested its performance. 39 C. J. 157 and 158. See also Thibault v. National Tea Co., 198 Minn. 246, 269 N. W. 466, 107 A. L. R. 702, and annotation page 705.

■ Not only did plaintiff fail to show what services were rendered during the time he claims his salary covered,

and what services were rendered during the so-called overtime, but he also failed to show a contract which would entitle him to more pay than the salary checks which he received.

The Court did not err in directing a verdict. The judgment appealed from is affirmed.

WALL, C.J., sitting for POLLEY, J.
ROBERTS, RUDOLPH and SICKEL, JJ. concur.
SMITH, P.J., not sitting.