Floyd R. SWIER and Eileen G. Swier, Plaintiffs and Appellants,

v.

NORWEST BANK, National Association, Brookings Branch, Defendant and Appellee.

No. 15248.

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1986.

Decided July 8, 1987.

Rehearing Denied Aug. 13, 1987.

David R. Gienapp of Arneson, Issenhuth & Gienapp, Madison, for plaintiffs and appellants.

Richard J. Helsper of Erickson & Helsper, Brookings, for defendant and appellee.

FOSHEIM, Retired Justice.

Floyd R. and Eileen B. Swier (Swiers) sued Norwest Bank (Bank) on third-party beneficiary and negligence theories. The trial court granted motions to dismiss both causes of action. We affirm.

In October of 1978, Swiers received a $179,982.93 loan from Bank on a demand note. The loan was ninety percent guaranteed by the Farmers Home Administration (FmHA) and scheduled to be paid over seven years with an interest rate originally established at 9¾%. By the following summer, Swiers consistently fell short of meeting the full amount of their principal and interest payments. By March of 1981, Swiers were approximately $20,000 delinquent. That same month Bank informed Swiers that due to higher interest rates in the market it would either have to raise their interest rate or call in the loan. Swiers reluctantly consented to this increase, and also to subsequent increases during the term of the loan. Due to the interest increases, Swiers paid Bank $30,555.12 more in interest than they would have paid had the original rate remained in effect. Swiers paid Bank back in January of 1985, apparently with the proceeds of a new FmHA loan.

A form committing FmHA to guarantee loans made to Swiers stated that "[a]ny change in interest rates from date of issuance of this form must be approved by the FmHA County Supervisor." The document was dated approximately the same date Bank extended Swiers the loan. FmHA approval was never obtained prior to the interest modifications. However, Bank sent the agency semi-annual reports which kept the agency abreast of the interest rates being assessed. Neither Swiers nor Bank were aware of the approval requirement until after the loan was paid off.

Swiers sued Bank, claiming that as borrowers they were third-party beneficiaries of the Bank/FmHA guarantee agreement. They claimed the $30,555.12 as damages, as well as physical and emotional losses and punitive damages. Their action was dismissed for failure to state a claim upon which relief could be granted. Prior to dismissing the action, the trial court granted Swiers' motion to amend their complaint to include a negligence cause of action. The negligence claim was added after a deposition of a bank official revealed that Bank's agents were unaware of the FmHA approval provision. Bank did not resist the motion to amend.

 We must first identify the true nature of the motions before the trial court. In deciding Bank's motion to dismiss, the court went beyond the face of the pleadings and considered deposition testimony, the words of the contract, and other evidence. In deciding motions to dismiss, SDCL 15–6–12(c) provides that where "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment...." The lower court's order and memorandum opinion denominated the motion as it was framed by Bank—a motion for dismissal.[1] Regardless of the label at-

---

Bank's motion as one for summary judgment.

tached by the lower court, however, "an appellate court will review a dismissal under the standards of summary judgment if outside matters were relied upon." 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 12.09[3] (2d ed. 1986). Therefore, although classified as a motion to dismiss below, this court will apply the familiar *Wilson v. Great Northern Railway Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968), standards applicable to summary judgment review. Under these standards we must view the evidence most favorably to Swiers, the nonmoving parties, and place the burden of proof upon Bank to demonstrate clearly that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law. *E.g. Meyerink v. Northwestern Public Service Co.*, 391 N.W.2d 180 (S.D.1986); *Wilson, supra.*

It is undisputed that Bank failed to request FmHA approval prior to the interest increases. However, it is equally undisputed that FmHA was informed of the interest increases through the semi-annual reports furnished by Bank. Also, Mr. Swier personally informed two agents of FmHA of the increased rates while the loan was outstanding.[2] Under these circumstances, we hold FmHA approved the increased interest rates. Because Swiers' complaint is premised on alleged injuries flowing from Bank's failure to obtain FmHA approval, the trial court correctly dismissed the complaint.

Finally, we address Swiers' claim that under FmHA regulations Bank had no right to increase the interest rate. Swiers cite 7 CFR § 1980.170(e)(1) (1986), which provides in part: "The interest rate initially established for each loan will remain constant during the existence of the FmHA guarantee." This regulation governs FmHA loans of a type not in question here and therefore does not apply in this case. *See* 7 CFR § 1980.101(a) (1986). Swiers received an FmHA emergency livestock (EL) loan. The regulations governing Swi-

ers' EL loan are contained in 7 CFR § 1980.201 through .294 (1978). These provisions contain nothing which would prohibit raising the interest rate while the loan is outstanding. *See* 7 CFR § 1980.224 (1978).

Affirmed.

WUEST, C.J., MORGAN and SABERS, JJ., concur.

HENDERSON, J., dissents.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (dissenting).

The majority opinion is based upon a faulty peg of conceptual rationale: namely, that *de facto* approval by the FmHA of an increase in interest rates existed.

There was a written Contract of Guarantee relating to the Swiers (a farming couple) and the FmHA on a loan. Prior to said contract, Northwestern National Bank (Bank) accepted an interest rate for a loan to farmers at 9¾%. This document was called a Conditional Commitment for Emergency Livestock Loan Contract of Guarantee. There were to be no changes in the interest rates unless approved by FmHA county supervisor. Approval was never obtained. Yet, the majority opinion holds there was a *de facto* approval of the increased interest rates. Bank (which became Norwest Bank at Brookings, South Dakota) increased the interest rates over and above the written agreed amount of interest until the farmers paid an excess of $30,555.12.

It is this type of banking activity which has precipitated, *inter alia*, the economic downfall of the American farmer. Bank wanted to maintain the FmHA guarantee of 90% but did not want to adhere to the 9¾% interest agreement. Bank behaved as it did because of a squeeze placed upon it

---

2. Mr. Swier asked the agents whether Bank had the right to raise the rates. According to Mr. Swier's deposition, one of the agents told him he would check into whether Bank had the right to raise the rates. This agent was transferred out of Brookings shortly thereafter and never replied to Mr. Swier regarding his inquiry. There is no evidence in the record whether the second agent ever replied to his inquiry.

by the credit department of bank in Sioux Falls, South Dakota (Norwest at Sioux Falls). This squeeze resulted in an increase in the market rate. Bank, faced with this market rate jump, attempted to raise interest rates or call in as many low interest loans as possible. According to the sworn deposition of Bank Officer Zaske, he made no prior request to the FmHA as he did not know "it was necessary"; and he further testified that had he known it was necessary to secure approval, he would not have increased the interest rate. This is strong testimony against Bank and the majority's holding. "It is settled law in South Dakota that a party to a lawsuit cannot claim the benefit of a version of relevant facts more favorable to his own contentions than he has given in his own testimony." *Connelly v. Sherwood*, 268 N.W.2d 140, 141 (S.D.1978). *Accord: Swee v. Myrl & Roy's Paving, Inc.*, 283 N.W.2d 570 (S.D.1979); *Drier v. Perfection, Inc.*, 259 N.W.2d 496 (S.D.1977). It appears to me that Bank is trying to elevate its legal position above the facts of the case and its own testimony. "As a former trial lawyer and circuit judge, I remember well the adage in the trial courtroom [here, a deposition]: A party is bound by his (her) testimony. 30 Am.Jur.2d *Evidence* § 1087 (1967); *Miller v. Stevens*, 63 S.D. 10, 256 N.W. 152 (1934)." *Martin v. Martin*, 358 N.W.2d 793,802 (S.D.1984) (Henderson, J., concurring in part and dissenting in part). *See also Lalley v. Safway Steel Scaffolds, Inc.*, 364 N.W.2d 139, 141 (S.D.1985) (Henderson, J., concurring in result); Northwest Digest *Evidence* Keynote 591; 30 Am.Jur.2d *Evidence* § 1087 (1967); 32 C.J.S. *Evidence* §§ 1040, 1045 (1964); *Annot.*, 169 A.L.R. 799 (1947).

Under SDCL 53–2–6, a contract for the benefit of a third person is permitted which may be enforced by him at any time before the parties thereto rescind it. Indeed, the key to identifying a third party beneficiary is whether the contract was "made expressly for [his] benefit...." *Id. See* Restatement (Second) of Contracts § 302(1) (1981);

J. Calamari and J. Perillo, *The Law of Contracts* § 17–2, at 607 (2d ed. 1977). Essentially, the trial court ruled that the farmers were incidental beneficiaries and were thereby barred from recovery under a third-party beneficiary theory. Conceptually, I disagree with that theory. Emergency livestock loans were established for farmers and ranchers—not bankers. *See* 7 C.F.R. § 1980.221 (1987).

Certainly, the provision *mandating* prior FmHA approval was intended to *primarily* benefit Swiers, as farmers. It is absolutely conceded that no such approval existed. Therefore, Swiers, as third-party beneficiaries, should be entitled to redress in the courts. Ironically, as per the majority opinion, although Swiers were intended beneficiaries of a contract entered into by an agency of the United States government, they are thwarted in their pursuit of its benefits and instead are made victims of it.

This farming couple had their case dismissed via an order granting Bank's motion to dismiss. The majority opinion applies summary judgment review standards. Surely, there are material questions of fact to be decided in light of the factual showings below, both as to (1) breach of contract and (2) negligence on the part of Bank. Bank's employee, Zaske, admitted to making a mistake because he was unaware of Bank's obligations. This is a defense in law? Facially, it appears Bank's officer was negligent in altering the interest rates without FmHA approval and the negligence should be presented to a jury for its ultimate resolve.[*] Regarding the contract cause of action, the contracts related specifically to the Swiers—the farmers—on a loan agreement of seven years at 9¾% interest; all loan documents, to include the interest restriction, were for their benefit and not for the benefit of either Bank or the FmHA. These farmers are entitled to be fully heard on every cent of the $30,555.12 excessive interest which they claim they have been overcharged.

*Great N. Ry.*, 83 S.D. 207, 213, 157 N.W.2d 19, 22 (1968).

---

[*] Actions founded in negligence are rarely suitable for summary judgment. *Stoltz v. Stonecypher*, 336 N.W.2d 654, 657 (S.D.1983); *Wilson v.*

Ergo, a jury of their peers should decide if a bank can treat people like this in the State of South Dakota and get away with it.