**HILLS OF REST MEMORIAL PARK, INC., Plaintiff and Appellant,**

v.

**David A. WITTE and Chapel Hill Funeral Home, Inc., Defendants and Appellees.**

**No. 15771.**

Supreme Court of South Dakota.

Argued Jan. 11, 1988.

Decided Aug. 24, 1988.

John E. Burke, Sioux Falls, for plaintiff and appellant.

Gary P. Thimsen of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendants and appellees.

HENDERSON, Justice (on reassignment).

## ACTION/PROCEDURAL HISTORY

Plaintiff, Hills of Rest Memorial Park, Inc. (Cemetery), a non-profit corporation, which operates the Hills of Rest Memorial Park cemetery, appeals unfavorable judgments entered by the circuit court for Minnehaha County. The case arose from Cemetery's allegations, among others, that Defendant David Witte (Witte), now doing business as Chapel Hills Funeral Home, misappropriated and converted its trade secrets and personal property, usurped a corporate opportunity, and violated his fiduciary duty to Cemetery in purchasing railroad property adjacent to Cemetery's land. Cemetery later amended its complaint to add a claim that Witte caused unauthorized sales commissions to be credited to him in its records. Witte, in turn, filed a counterclaim for unpaid commissions.

The circuit court bifurcated the proceedings, holding two separate trials. Cemetery's equitable claims regarding the railroad property were tried to the court, resulting in a judgment directing Witte to transfer the railroad property to Cemetery, but ordering Cemetery to reimburse Witte for his expenses, comprising $7,138.19 in acquisition costs and $4,996.64 for maintenance and improvements. After trial on the actions at law, the jury issued verdicts in Witte's favor, and awarded him $59,-410.28 on his counterclaim for commissions accrued during his employment with Cemetery. The court allowed Witte to recover prejudgment interest and costs.

Cemetery appeals, asserting trial court error in five respects, thereby creating the issues herein.

## ISSUES

1) Insufficiency of evidence to support the jury verdict;
2) Use of a jury instruction unsupported by evidence;
3) Erroneous and prejudicial evidentiary rulings;
4) Improper award of funds for maintenance and improvements to the railroad property; and
5) Prejudgment interest.

Cemetery argues that errors on Issues 1, 2, and 3 mandate a new trial on the merits of its causes of action at law. We agree and reverse on that basis. The trial court is affirmed on Issue 4, which applies only to Cemetery's equitable claims. We do not reach Issue 5, prejudgment interest, in light of our reversal on the first three issues.

## FACTS

On May 10, 1978, Cemetery was put into receivership. Witte was appointed receiver, and served in that capacity until termination of receivership on May 1, 1979. Thereafter, by action of Cemetery's board of directors, Witte was employed as Cemetery's administrator. In March 1984, the board learned that Cemetery's financial statement, dated January 31, 1984, indicated that Cemetery owed Witte $100,336 in accrued sales commissions. At the time Witte resigned, January 3, 1985, Cemetery's records reflected an unpaid balance of $77,304.72. A review of the transactions underlying these commissions, undertaken by a member of the board, Richard Daniels, showed that this figure included commissions of $7,573.57, reportedly earned during the period of receivership, for which no authority existed, $4,224.07 in commissions on cancelled contracts, and $6,160.60 on payments not yet received by Cemetery. (These amounts, when deducted from the amount allegedly outstanding, $77,304.72, yield $59,346.48, a total lower than the jury

award.) At trial, Witte conceded that additional commissions were based on sales of mausoleum spaces which were sold before the board authorized such commissions. Other alleged anomalies were discovered in Cemetery's review of its records. Contradictions in the minutes, prepared by Witte, of board meetings where the topic of commissions was discussed created confusion, as when the minutes of one board meeting showed Witte forswearing commissions for "pre-need" sales during an accounting period from February 8, 1980 to April 15, 1981, yet minutes of a later meeting reflected Witte as earning 15% commission on such sales. At trial, Witte relied primarily on an audit prepared by an accounting firm, employed by Cemetery, which verified the accuracy of Witte's claim to the full amount of commissions; however, letters from the firm to Cemetery advised that the audit was limited in scope. Admission into evidence of these letters, which were parts of the audit process, was denied by the trial court.

During Witte's term at Cemetery, two written employment contracts existed. The first, Exhibit No. 1 at trial, specified that he was to receive 15% commission on "pre-need" merchandise sales ("pre-need" denoting sales of cemetery merchandise for future use when the potential consumer is still alive, while "at-need" applies to merchandise purchased for those already deceased). This contract was signed June 22, 1979, and by its terms, was effective from May 1, 1979, until January 31, 1980. It contained provisions for annual review of its terms and renewal, but no such action was ever taken. At trial, evidence of variations in commission percentage, and the merchandise to which commissions applied, was developed by both sides. The second contract, dated August 20, 1984, provided that Witte was due 10% commission on sales of "pre-need" and "at-need" (for which no commission was earned previously) merchandise, and 5% commission on sales of mausoleum crypts. Over Ceme-

tery's objections, the circuit court instructed the jury, by Instruction No. 14,* that a presumption arises extending the terms of employment contracts beyond their expiration dates if employment relationships continue.

Shortly after Witte resigned as administrator, one of his employees, Gregg Anfinson (who was employed by both Cemetery and Chapel Hill Funeral Home) gathered index cards (some 2,400, according to Witte), containing files on potential customers, belonging to Cemetery and took them to Witte's premises. Anfinson's deposition, read at trial, indicated that he copied the cards for Witte, using money provided by Witte. Witte denied knowledge of the copying, and testified that Anfinson had acted on his own. Witte returned 2,400 cards to Cemetery within five days. These acts formed the basis of Cemetery's allegations regarding trade secrets. Cemetery asserted that the cards taken were worth $10 each before being copied, and lost all value afterwards. Richard Daniels was allowed to testify as to the initial value of these cards (whose number he estimated at three to five thousand), but his testimony that their value was totally destroyed by the alleged copying was disallowed as speculative and lacking foundation.

The remaining facts relevant to Cemetery's appeal stem from its equitable claims arising from Witte's purchase of railroad property. Witte ascertained that property adjoining Cemetery's land was available for $55,000. He informed the board, which was unwilling to meet that price. Nonetheless, the board was interested in the property. Witte later learned that the railroad could offer only a quit-claim deed and would sell it for $5,500. Knowing that his employer was interested in the property, he purchased the property for himself and made various improvements. On February 2, 1987, the court entered judgment in favor of Cemetery on its claim for usurpation of corporate opportunity because it found

* Instruction No. 14:
  Where after the expiration of an agreement respecting the wages and the term of service the parties continue the relation of Employer and Employee, they are presumed to have renewed the agreement for the same wages and term of service.

that Witte had violated his fiduciary duty by not advising the board of directors of his ability to purchase the adjoining railroad property for less than $55,000 and by acquiring the property in his own name for $5,500. The court ordered Witte to transfer the property to Cemetery and ordered Cemetery to compensate Witte for his acquisition costs, including the purchase price, realtor fees, and taxes. The parties could not so agree, with respect to valuation of maintenance and improvements, and the trial court amended its judgment, adding $4,996.64 for additional expenses to the $7,138.19 initially awarded. Cemetery has appealed an award of these additional costs.

At trial on the causes of action arising at law, this jury verdict favored Witte, awarding him $59,410.28 on his counterclaim, and rejecting all Cemetery's counts. The trial court awarded Witte $22,530.33 in prejudgment interest, and $1,496.41 in costs. This appeal followed the trial court's denial of Cemetery's motion for a new trial. A trial court has broad discretionary power in granting a new trial on the basis of insufficiency of the evidence. We will not disturb that order, absent a clear showing of abuse of discretion. *Lewis v. Storms*, 290 N.W. 2d 494 (S.D.1980). A clear abuse of discretion, we hold, is demonstrated hereunder.

## DECISION

### I. *Insufficiency of Evidence to Justify Verdict*

■ Under Witte's own version of the facts, the award of damages exceeds his presentation to the jury. Witte cannot benefit by a version of facts more favorable to his own contentions than he himself has presented during testimony in his case. *Swier v. Norwest Bank*, 409 N.W.2d 121, 124 (S.D.1987) (Henderson, J., dissenting); *Martin v. Martin*, 358 N.W.2d 793, 802 (S.D.1984) (Henderson, J., concurring in part, dissenting in part); *Connelly v. Sherwood*, 268 N.W.2d 140 (S.D.1978); 30 Am. Jur.2d *Evidence* § 1087 (1967). *See also Lalley v. Safway Steel Scaffolds, Inc.*, 364 N.W.2d 139, 141 (S.D.1985) (Henderson, J., concurring in result).

### II. *Instruction Not Supported by Evidence*

■ Instruction No. 14 correctly recites the law under SDCL 60-1-5 pertaining to the expiration of agreements and a presumption of renewal for the same wages and terms of service where the parties continue in a relationship of employer and employee after the expiration of their agreement. The only wage agreement or contract entered into by these parties, which this jury could allude to in applying Instruction No. 14, was Exhibit No. 1. However, this instruction should not have been given because it did not have proper application to the facts; the evidence before the jury established that although an agreement existed between Witte and Hills of Rest, this agreement changed several times over. Trial courts can only present those issues to the jury, through their instructions, which find support by competent evidence in the record. *Frazier v. Norton*, 334 N.W.2d 865 (S.D.1983); *Atyeo v. Paulsen*, 319 N.W.2d 164 (S.D.1982). These various modifications to this original contract became the heart of the lawsuit and not an obligatory carry-over on the old contract under Instruction No. 14. These various modifications were reduced in writing by Witte and placed in the minutes of his employer-corporation. "A trial court is to present only those issues to the jury by way of instruction which find support by competent evidence in the record." *Van Zee v. Sioux Valley Hosp.*, 315 N.W.2d 489, 492 (S.D.1982) (citing *Wolf v. Graber*, 303 N.W.2d 364 (S.D.1981); *Olesen v. Snyder*, 277 N.W.2d 729 (S.D.1979)). Instruction No. 14 simply did not find support "by competent evidence in the record." It was reversible error to give the instruction, for it postured the decision of the jury, in law, contrary to the facts which were tried before the jury.

### III. *Prejudicial Evidentiary Rulings*

■ The trial court's rejection of Exhibits Nos. 25 and 26, offered by Cemetery, was an evidentiary ruling which impacted against Cemetery's case to such a degree

that it caused an unfair result; both of these exhibits were pertinent letters containing facts that were in favor of Hills of Rest and against Witte, in this: Had these statements been presented to the jury, it would have reduced the authenticity of the accountants' claim that Witte's commissions were chargeable as reflected by statements of the accountants. Audits of accountants can be wrong, and such audits are only as reliable as the sources of information relied on by the accountants. These exhibits were the accountants' exploration of the scope and limitations of their methods. Prepared by Henry Scholten & Company accountants as part of the audit process carried out at Cemetery's request, they constitute business records admissible under SDCL 19–16–10. Exhibit No. 25 indicated that the information used in the audit was "the representation of the management of Hills of Rest Memorial Park, Inc.," *i.e.*, Witte, who testified that this exhibit described what the accountants were hired, by him, to do. Exhibit No. 26 reflected that errors and irregularities could occur in the audits and yet the trial court withheld the letters from the jury. These audits are certainly not binding on any of the parties and when the accountants, themselves, reflect that there could be errors in the figures (the commissions being the heart of the lawsuit), a jury should know that the figures on the commissions are not absolutely a "given" on accuracy. Therefore, the trial court abused its discretion in rejecting this evidence. It was prejudicial error. *Gross v. Gross*, 355 N.W.2d 4 (S.D. 1984); *Rykhus v. Rykhus*, 319 N.W.2d 167 (S.D.1982); *Herndon v. Herndon*, 305 N.W.2d 917 (S.D.1981).

■ We reject Cemetery's assertions of error regarding the additional expenses awarded in the equitable action. Witte is entitled to his reasonable expenses incurred in maintaining and improving his property. A contrary result would unjustly enrich Cemetery. Under our holding, Cemetery maintains title to the adjoining railroad property.

We do not reach the prejudgment interest issue. Judgment affirmed in part and reversed in part.

MORGAN and MILLER, JJ., concur.

SABERS, J., concurs specially.

WUEST, C.J., dissents.

SABERS, Justice (concurring specially).

I am concerned with the problems presented by Issue I, relating to recovery being limited to Witte's own version, and Issue II, as well as Instruction No. 14, but not enough to vote for reversal on that basis alone.

Issue III is another matter. These letters (Exhibits Nos. 25 and 26) were clearly business records under SDCL 19–16–10. Although these letters were not prepared by Hills of Rest, they were the basis on which the *limited* audit of Hills of Rest's books *was* requested by them and *was* performed by the CPA firm. The jury was entitled to know the scope of the audit report and Hills of Rest was entitled to have the jury know.

I am also concerned about the refusal of the trial court to allow Daniels to testify as to the loss of value of the trade secrets and sales cards converted by Witte. Daniels was in a position similar to an owner and his testimony should have been received. Witte's objections go to the weight and credibility of the testimony, not admissibility or foundation.

Cumulatively, I think these problems and errors require a new trial so I join the majority opinion, at least in part.

WUEST, Chief Justice (dissenting).

I respectfully dissent.

The majority claims the award of damages to Witte "exceeds his presentation to the jury." A thorough examination of the record, however, proves that this statement is unfounded. The record shows a certified public accounting firm's analysis of commissions payable to Witte totalling $77,368.52. This total matches the amount Witte claimed for commissions payable. From there, Witte conceded at trial certain amounts should be deducted from that total—$7,573.57 for commissions claimed during receivership, $4,224.07 in cancelled sales, and $6,160.00 in unrecorded pay-

ments. The jury awarded Witte $59,-410.38, which is exactly $77,368.52 minus the deductions Witte admitted should be made. *Witte's "version of the facts," therefore, matches the jury award.*

The majority also asserts that Instruction No. 14 should not have been given to the jury. The record once again shows the error in the majority's claim. The initial employment contract between Witte and Hills of Rest entitled Witte a $20,000 annual salary and a 15% commission on payments received on pre-need sales of merchandise. The contract became effective in May, 1979, and was to continue on an annual basis for each subsequent February 1 through January 31 period unless otherwise changed. A second contract was entered by the parties in August, 1984. During the time the initial contract was in force, Hills of Rest's Board of Directors periodically initiated different pre-need sales programs applying various sales commission rates. No sales commission rates, however, were established by the board during the interim periods when pre-need sales campaigns were not in effect.

Instruction No. 14 correctly stated that if an employee continues working after his term expires, it is presumed the parties intended the terms of the contract to continue. SDCL 60–1–5; *Jorgensen v. Midland Nat. Life Ins. Co.*, 71 S.D. 43, 48, 21 N.W.2d 54, 56 (1945). The majority, however, claims this instruction *"did not have proper application to the facts"* since the agreement between Witte and Hills of Rest *"changed several times over."* (Emphasis supplied). The majority's claim parrots the argument offered by Hills of Rest which states that because of the instruction, the jury "simply gave Witte the 15% commission throughout the whole period." This is simply not true. In determining the amount of Witte's award, the jury used a balance sheet indicating commissions payable at rates of 15%, 10% and 5% according to each pre-need sales program and the applicable sales commission implemented by the board of directors. When the various pre-need sales campaigns were not in force, Hills of Rest itself used the 15% figure. Instruction No. 14 merely directed the jury to do that which was done by Hills

of Rest—apply the original contract rate during the interim periods when pre-need sales programs were not in effect and no sales commission rates had been established by the board to cover those periods. In light of these facts, it can hardly be contended that Instruction No. 14 was inapplicable and that the trial court erred in giving the instruction to the jury. *See Wheeldon v. Madison*, 374 N.W.2d 367, 372 (S.D.1985); *Black v. Gardner*, 320 N.W.2d 153, 158 (S.D.1982); *Wolf v. Graber*, 303 N.W.2d 364, 366 (S.D.1981).

In a related argument, Hills of Rest claims that there should have been a "further instruction by which [the jury] could find any subsequent agreements between the Board of Directors and Witte constituted a revision of [the original contract] and controlled the relationship between the parties." Hills of Rest then states this amounted to a *"miscarriage of justice."* (Emphasis supplied). This argument ignores the fact that the jury did not use the 15% commission rate during the entire employment period. The jury award reflected not only the various rates applied on the balance sheet analysis of commissions payable *but also the rate changes established in the board minutes.*

The majority's final claim is that the trial court erred by excluding Exhibits Nos. 25 and 26 from evidence. Although relevant, these exhibits were cumulative to the evidence adduced during the accountant's extensive testimony regarding the parameters of his review and would have added little to the inquiry. The trial court did not act improperly by excluding the exhibits since the jury had already heard the evidence therein. Once is enough. SDCL 19–12–3; *State v. Swallow*, 405 N.W.2d 29, 37 (S.D.1987). *See also Matter of Estate of Jones*, 370 N.W.2d 201, 205 (S.D.1985).

While this case is difficult to decide, the record does not support the claims found in Hills' brief or the majority opinion.

I would affirm.